**UNITED STATES of America,
Plaintiff,**

**v.**

**S/S HELENA, her engines, boilers, tackle and appurtenances, etc., in rem, and Progressive Mariners S. A., Sincere Navigation Corp., and ABC Insurance Company and XYZ Insurance Company, Defendants.**

**In the Matter of the Complaint of SIN-CERE NAVIGATION CORP. as Owner of the S/S Helena, for Exoneration from or Limitation of Liability, Petitioner.**

**Dorothy DIETZ, Wife of and Ramon J. Gutierrez, Plaintiffs,**

**v.**

**S. S. HELENA, Defendant.**

**Civ. A. Nos. 68-2250, 68-2254, 68-2243.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Jan. 6, 1969.

James D. Carriere, Asst. U. S. Atty., Michael Cohen, Dept. of Justice Admiralty Section, Washington, D. C., for United States of America.

Warren M. Faris, New Orleans, La., for The S/S Helena and Sincere Navigation Corporation.

S. E. Gutierrez, Jr., New Orleans, La., for Dorothy Dietz and Ramon J. Gutierrez.

George A. Frilot, III, New Orleans, La., for Mrs. Linda Dale Jacks and Mrs. Myrlon Mina Lundquist.

**RULING ON MOTIONS TO VACATE
SEIZURE AND INCREASE
SECURITY**

RUBIN, District Judge:

On December 7, 1968, at 6:29 p. m., there was a collision between the S/S HELENA and a Coast Guard buoy-tender, the WHITE ALDER, in the Mississippi River near White Castle, Louisiana. The WHITE ALDER sank, and only three men of her crew of twenty were rescued.

On December 9, the parents of Ramon J. Gutierrez, Jr., one of the seamen who apparently perished in the disaster, filed suit against the HELENA for damages resulting from his death and seized the vessel. On December 10, the United States filed suit against the HELENA, her owners and two unknown insurers, and secured a writ of attachment to recover the value of the WHITE ALDER and the cost of her removal.

On December 10, Sincere Navigation Company, alleging itself to be owner of the HELENA, filed a petition for limitation of liability. Thereafter claims were filed in the limitation proceeding by the surviving spouses of two of the deceased seamen. All proceedings were consolidated for testimony on the issues raised by motions, each of which will be considered separately.

## I. TRAVERSE OF VALUE

The bond in the limitation proceeding was filed for $290,000; $245,000, representing the value of the vessel, and $45,000, representing the value of her freight. Following considerable testimony on the value of the vessel, the parties stipulated that her value is $272,500. Since the value of her freight was not in dispute, the amount of the bond required under the Limitation Act, 46 U.S.C. § 185, as "a sum equal to the amount or value of the interest of such owner in the vessel and freight" is fixed at $317,500.

## II. INCREASE OF SECURITY TO $60 PER TON MINIMUM FOR CLAIMS FOR BODILY INJURY AND DEATH

The claimants suggest that the sum of $317,500 is insufficient to cover in full all losses sustained in the collision, and therefore, that the bond should be increased to an amount that will provide $60 per ton "for the payment of losses in respect of loss of life or bodily injury," in accordance with the provisions of the Limitation Act, 46 U.S.C. § 183.

The Limitation Act provides a doubtful compass by which to steer the voyage we must here undertake. Its deficiencies have been fully noted,[1] but they are as yet unremedied. The addition of Section (b), 46 U.S.C. § 183(b), made the needle's quiver even more marked.

Section 183(a) of the Act provides that liability of the owner of any vessel "for any loss, damage or injury by collision" or "for any * * * damage * * * done, occasioned or incurred, without the privity or knowledge of such owner * * shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending."

Subsection (b) was added after the Morro Castle disaster in which the vessel was almost totally destroyed with 135 lives lost, and the vessel owner sought to limit liability to a $20,000 fund in the face of damage claims amounting to $1,450,000. It was designed to provide a minimum fund amounting to $60 per vessel ton to pay damages for loss of life and bodily injury resulting from marine casualties, even though the vessel might be totally destroyed.

 The claimants contend that the security deposited by the owner must be increased by this amount. The owners cite authority to the contrary,[2] and raise

---

1. See Gilmore & Black, The Law of Admiralty, 1957, pp. 667–77, 717–22.

2. The Iowa, Oregon, 1936 A.M.C. 1340 is directly in point. Judge Fee refused to order an increase in the fund beyond the value of the wreck and its freight then pending. No reasons were stated. In The Park Victory, S.D.N.Y., 1953 A.M.C. 808, the court refused to order an increase but $90,000 in security had been deposited and the total amount asserted

in claims was only $175,000. The court said merely, "it has not yet been determined that the amount in the stipulation as filed under sec. 183(a), 46 U.S.Code is insufficient * * *." 3 Benedict On Admiralty, 7th ed. § 500, pp. 435–436 says, "[*T*]*here can hardly be a situation,* prior to a determination of liability on the merits, which would justify a court in refusing more than the usual stipulation," (emphasis supplied) but apparently this author concedes from the italicized words

questions unresolved by the Limitation Act. They suggest correctly that the $60 per ton minimum provision applies only to the portion of the limitation fund available to pay damages for loss of life or bodily injury when the owner's limited liability is insufficient to fully pay property losses and damages for loss of life or bodily injury. But they claim that it can not now be determined what amount will be required to pay the other claims. Hence, they argue, it also can not be determined what additional sum is requisite to increase the portion available for the payment of death and bodily injury claims to $60 per ton.

In search of answers, we turn first neither to history, philosophy, nor jurisprudence, but to the statutory provisions relative to security. 46 U.S.C. § 185. As a condition to limitation of liability, "the owner * * * shall deposit with the court * * * a sum equal to the amount or value of the interest of such owner in the vessel and freight, or approved security therefor, *and in addition such sums * * * as the court may from time to time fix as necessary to carry out the provisions of section 183 * * *.*" 46 U.S.C. § 185(a). (Emphasis supplied.) The italicized words reflect the intention that the amount of security required may exceed the value of the vessel and freight. They were added in 1936 as part of the act of June 5, 1936, c. 521, 49 Stat. 1480, the same statute that first provided for the $60 per ton minimum liability. Nor is there any other part of Section 183 to which they might logically refer. Hence we must conclude that the security must be fixed by the court with the $60 per ton minimum in mind.

Plumbing the statute itself reveals further answers to the questions raised concerning the amount of the security. There are two soundings, one objective, the other discretionary. The first is the value of vessel and freight. The other is to be fixed by the court from *time to time*. This means, presumably, that the amount should be fixed now and that it may be changed later.

The evidence at present indicates that the claims against the owners may include:

(a) The cost of removing the wreckage of the WHITE ALDER. The parties have stipulated that, for the present, this may be taken as exceeding the value of the vessel and its freight, and that this is to be covered by separate security in Civil Action 68–2250. Hence it need not be taken into account in fixing the security required in the limitation proceeding.

(b) The value of the WHITE ALDER. The parties have not yet been able to adduce evidence of this. Counsel for the owner of the HELENA says $1,000,000; the United States suggests a sum in excess of $1,500,000.

(c) The claims for bodily injury and death. Seventeen men were killed, three others injured. To date the survivors of five seamen, and one of the rescued seamen have filed claims.

All parties agree that the fixing of security is urgent so that the HELENA may depart to load cargo in another port, to meet contractual obligations, and to avoid being tied up indefinitely during a potential longshoremen's strike. Hence the amount of security will be fixed now, with full reservation of rights to any party to move later to change it, in accordance with 46 U.S.C. § 185. The parties have agreed that for present purposes it may be assumed that $216,060 will be available to meet the death and personal injury claims.

that a court has statutory authority to exact added security if the unusual situation should arise. Gilmore & Black think the statute suggests that questions of liability and limitation under Section 183(a) must first be settled before the additional fund is set up but with no clear authority for this view. The Law of Admiralty, 1957, pp. 718–719. See also Oliver J. Olson & Co. v. American Steamship Marine Leopard, 9 Cir. 1966, 356 F.2d 728.

The $60 per ton fund is established as follows:

(a) Tonnage of the HELENA determined under § 183(c) as 7202 tons.[3]

(b) Multiply tonnage by $60. $432,120.00

(c) Subtract amount determined at this time as likely to be available from the initial limitation fund. 216,060.00

Additional security required under § 183 (b). $216.060.00

---

3. Under 46 U.S.C. § 183(c) the tonnage is calculated by multiplying the gross tonnage (7648 tons in the instant case) by $60 and then subtracting from that figure the tonnage allowed for crew space (446 tons in the instant case) multiplied by $60, i. e.,

(a) 7648 (gross tonnage)
 × $60
 $458,880

(b) 446 (tons allowed for crew space)
 × $60
 $26,760

(c) $458,880 (a, supra)
 26,760 (b, supra)
 $432,120