Mrs. Joan Francis LAW, personal representative of the Estate of Wesley J. Law, Sr., etc., et al., Plaintiffs-Appellees,

v.

SEA DRILLING CORPORATION and Continental Oil Corporation, Defendants-Appellants.

Thomas J. LeBEOUF, Plaintiff-Appellee,

v.

SEA DRILLING CORPORATION, Defendant-Appellant.

No. 30657.

United States Court of Appeals, Fifth Circuit.

March 21, 1975.

244

A. R. Christovich, Jr., New Orleans, La., for Sea Drilling Corp.

Donald V. Organ, Joy S. Miller, New Orleans, La., for Continental Oil Corp. (Conoco).

Kenneth W. Manuel, John R. Martzell, New Orleans, La., for Joan F. Law.

Philip E. Henderson, Robert L. Morris, Houma, La., for Thomas J. LeBeouf.

Before BROWN, Chief Judge, GEWIN and MORGAN, Circuit Judges.

BROWN, Chief Judge:

Wesley Law and Thomas LeBeouf, employees of a service contractor, stood on the ramp running from a seagoing tender vessel to the fixed platform on the Outer Continental Shelf. The ramp —ominously, gruesomely but accurately for this case described as a "widow maker"—broke, precipitating both into the sea with severe injuries to Law which brought about his death within the hour. Precipitated as well were many intricate questions of law, not the least of which was *what* law controls? Surrogate law[1] of Louisiana, the adjacent state? Federal statutory law in the form of Death on the High Seas Act[2] (DOHSA)? Or general maritime law under enlightened principles which freed the Supreme Court of the death hand—indeed more accurately the no death hand—of the Nineteenth Century?[3] Time, tide and the incessant grist from the judicial mill and, most important, from the highest mill[4] have washed out most of these

1. Rodrigue v. Aetna Casualty & Surety Co., 1969, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360, 1969 A.M.C. 1082.

2. Death on the High Seas Act, 46 U.S.C.A. § 761 et seq.

3. Moragne v. States Marine Lines, 1970, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339, 1970 A.M.C. 250.

4. In addition to Moragne there were Huson v. Chevron Oil Co., 5 Cir., 1970, 430 F.2d 27, 1970 A.M.C. 1978, rev'd., 404 U.S. 97, 92

problems since the distinction between the competing bodies of law pertain finally only to items of damages on which all sources now coalesce.[5]

Continental Oil Corporation (Conoco) and Sea Drilling Corporation (Seadrill) appeal from the judgment of the District Court holding them jointly liable for the death of Wesley Law and the injury to Thomas LeBeouf that arose from that accident. The trial judge determined there was sufficient evidence to demonstrate that each was "actively" negligent and assessed damages, some jointly, and some allocable separately under the respective applicable laws—Conoco under the Louisiana surrogate *Rodrique* law and Seadrill under DOHSA. Each attacks the decision that they were each actively negligent and then, with a magnanimity characteristic of the typical Tinker-to-Evers to-Chance donneybrook each seeks to lay the whole off onto the other on all of the theories—contractual, land-based, maritime or ambiguous amphibious—of indemnity and contribution. We affirm the disallowance of reciprocal cross-claims for indemnity and with modification as to the allocation between the tortfeasors of the award to the plaintiffs except we reverse one issue—the appropriateness of permitting the recovery for future cost of living increases.

### The Widow Maker

Wesley Law was killed and Thomas LeBeouf was injured when the ramp on which they were working collapsed, crushing Law and hurling them both into the Gulf swells below.

On the date of the accident this particular fixed platform, designated CATC–EC–63–B (63–B), was one of many owned and maintained by Conoco on the Outer Continental Shelf area of the Gulf of Mexico. Pursuant to its contract, Seadrill agreed for a year to drill wells from several of these platforms and to provide for this purpose its own drilling rig and an LST-type tender vessel, SEADRILL XI, with its equipment, including a steel ramp. This ramp had to be adapted to the existing ramp support structure of Conoco's platform. This structure had been designed in 1956 by Brown & Root in cooperation with Conoco to specifically accommodate the ramp systems of tender vessels owned by Conoco itself. These earlier Conoco ramps were far lighter in weight and were so designed that the vessel-end of the ramp was suspended from the platform by cables, thus eliminating any contact with the vessel and potential single, double or triple dimension stresses from vessel movement.

By contrast, the Seadrill ramp assembly system did contact the vessel directly. In addition, it was designed to rest the entire weight of the platform-end of the ramp on the platform ramp support by the use of a linkage known as a fifth wheel. This fifth wheel, approximately 6 feet by 6 feet and 4 feet high, functions somewhat like a trailer hitch. The combined linkage at the ramp platform-end and the fifth wheel permits only lateral motion but not other motions from the roll and pitch of the vessel.

To accommodate the fifth wheel, the 63–B platform support beams had to be extended beyond the vertical column support system. According to the testimony of Seadrill employees, the need for this extension was called to the attention of the Conoco employee in charge of supervising the loading operation. Together employees of both companies agreed that a 17 inch extension should be welded to the ramp support. Then, without the benefits of engineering advice or any apparent consideration of the effects of this extension on an already overloaded ramp support,[6] Seadrill employees weld-

S.Ct. 349, 30 L.Ed.2d 296, 1972 A.M.C. 20; Executive Jet Aviation v. Cleveland, 1972, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454, 1972 A.M.C. 1915; Victory Carriers, Inc. v. Law, 1971, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383, 1971 A.M.C. 810; Sea-Land Services, Inc. v. Gaudet, 1974, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9, 1974 A.M.C. 1893, each of which

in turn precipitated a request for supplemental briefs from the parties.

**5.** See note 19, *infra*, itemizing the damages adjudged.

**6.** Conoco's own witness, Fred Hauber, an employee of Brown & Root which had collaborated in the design of this platform, testified

ed the extension and, lastly, the fifth wheel in place. The following day a tool pusher for Seadrill noticed lateral play in the ramp support and ordered that additional lateral supports be installed.

On the next day, Law and LeBeouf, employees of Superior Casing Crews, the company that had contracted to drive the surface casing in the well being drilled, were working on the platform. A 6 ton diesel hammer required to drive the surface casing had been offloaded onto SEADRILL XI from an equipment barge earlier that day. The procedure was to lift the hammer from the deck of SEADRILL XI, lower it onto the ramp, remove the shackles from the vessel crane, connect the shackles from the platform crane, lift it and then swing it over and onto the platform. While Law—the supervisor of the crew, LeBeouf, and a third Superior worker were on the ramp in the process of removing the shackles from SEADRILL XI's crane and detaching the lead from the platform crane to the diesel hammer, the ramp support on which the fifth wheel rested collapsed.

### The Suit and Judgment

Law received crushing blows to his pelvic area and died 30 minutes to an hour later on board the SEADRILL XI after a prolonged and difficult rescue. Thomas LeBeouf, in shock and in pain from his left shoulder throughout his arm, suffered a respiratory infection from the salt water but was able to return to work about two weeks later.

Joan Law, as personal representative of the estate of Wesley Law, brought this action on her own behalf and that of her three minor children alleging negligence and unseaworthiness against Seadrill, negligence against Conoco invoking the wrongful death provisions of the Louisiana code,[7] DOHSA and general maritime principles. On an extensive evidentiary record, the District Judge found that each was negligent, the SEADRILL XI was unseaworthy and held them both liable jointly and in solido. The Court awarded $191,388.55 against both with separate additional recoveries of $70,000.00 against Conoco and $24,000.00 against Seadrill. (See note 19, infra).

### Negligence Of Conoco And Seadrill

■■ The defendants cross swords on appeal first and foremost over the issue of whether their actions were individually negligent. Failing vis-a-vis the victims, each would then seek to shift the taint of negligence and its monetary burden to the other under any one or more or all of three theories: (i) Tri-State[8] active-passive-major-minor tort indemnity principles, (ii) breach of the Ryan[9] WWLP warranty,[10] and (iii) contractual indemnity in the drilling contract. However, after a full review of the transcript, we are convinced that the finding of active negligence by both defendants is adequately supported by the evidence.

A brief description of the drilling procedure followed by both pursuant to their contract demonstrates their individual culpability and hence joint liability for this tragedy. The fault of Conoco lay in its failure to fulfill its supervisory

---

that the ramp support was designed only for static, not dynamic, loading. The heaviest load that had ever been envisioned for the ramp was 10,000 lbs. The diesel hammer being loaded at the time of the accident alone weighed more than that. Hauber testified that in his opinion the collapse was due to fatigue failure caused by a combination of motion and stress.

7. Louisiana Civil Code, Article 2315.

8. Tri-State Oil Tools Industries v. Delta Marine Drilling Co., 5 Cir., 1969, 410 F.2d 178, 1969 A.M.C. 767.

9. Ryan Stevedoring Co., Inc. v. Pan-Atlantic S. S. Corp., 1955, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, 1955 A.M.C. 2137.

10. D/S Ove Skou v. Hebert, 5 Cir., 1966, 365 F.2d 341, 1966 A.M.C. 2223; Boutte v. M/V Malay Maru, 5 Cir., 1967, 370 F.2d 906, 1967 A.M.C. 2149; Grigsby v. Coastal Marine, 1969, 5 Cir., 412 F.2d 1011, 1969 A.M.C. 1513; Burrage v. Flota, 5 Cir., 1970, 431 F.2d 1229, 1970 A.M.C. 2254; Legnos v. M/V Olga Jacob, 5 Cir., 1974, 498 F.2d 666, 1974 A.M.C. 2328.

responsibilities over the equipment transfer procedure of which the ramp installation was a major part. On two prior occasions Conoco had employed the same tender vessel and equipment to drill wells from its platforms. Both times its engineering department ascertained the requirements of the rig and modified the platform to fit Seadrill's equipment. Although both platforms lacked any ramp support and therefore required obvious alterations, unlike platform 63–B here, the Judge could find that Conoco was aware of the design and weight limitations of platform 63–B and the peculiar needs of the fifth wheel design of the SEADRILL XI ramp but failed to coordinate this knowledge among its various departments.

While there was no specific inspection procedure called for under the contract requiring Conoco's engineering department to check the ramp system, Conoco bore full responsibility for supervising the rigging operations and it provided a man at the job site for this purpose.[11] There was testimony that the trial judge could credit fully showing that this Conoco supervisor agreed to the ramp extension which further weakened the already overstrained support structure.[12]

In short, there was ample basis for the Judge's finding that Conoco was negligent in each of the respects listed.[13]

While the fault of Seadrill differs from that of Conoco, it is clear that its employees on the job site also made crucial decisions that contributed directly to the accident. Seadrill employees were the first to recognize that modifications would be necessary to enable the platform support to accommodate their ramp. Despite their own lack of engineering knowledge, they did not consult Conoco's engineering department but took it upon themselves to weld the ramp support extensions that they thought necessary. While it was the original platform member itself, rather than these welds or the extension, that snapped, this affords no escape because it was the overweight of ramp and diesel hammer that caused the ramp to fail. There is more than enough to warrant the finding of fault.[14]

---

11. Furthermore, Conoco's supervisory control over this operation was not eliminated by its delegation to Seadrill of the authority to make on-the-job alterations as necessary to accommodate the drilling equipment. Such authorization was evidenced in Conoco's answer to plaintiff's interrogatories:

"No. 11 Was the addition of extension beam to the previously existing beams approved by Continental Oil Company prior to the start of the actual construction? Answer. Sea Drilling Company had implied approval to make any necessary and proper alteration in order to accomplish their purpose; however, no advance specific approval was requested or given regarding the extension under discussion."

"Please refer to Answer No. 30 of previous interrogatories and state the date an extension to the beams was made by Sea Drilling Corporation.

(e) Whether or not said extension was made with the actual knowledge and permission, actual or implied, of Continental Oil Company or any of its agents or employees Answer. Yes."

12. See note 6, *supra.*

13. The trial judge specifically found:

A proximate cause of the failure of the ramp support was the negligence of Continental Oil Company in:

a) The improper design and construction of the original ramp support.

b) Permitting the ramp support to be used in a manner contrary to its original intended use.

c) Permitting Sea Drilling Corporation to install its equipment on Continental Oil Company's platform without determining the capacity of its platform and ramp support and without determining the mechanical effects of Sea Drilling Corporation's equipment on the platform.

d) Permitting Sea Drilling Corporation to alter the ramp support without proper supervision and without adequate engineering studies and bracing to provide a safe ramp system.

e) Permitting Sea Drilling Corporation to overload its ramp support.

14. The Court found:

A proximate cause of the failure of the ramp support was the negligence of Sea Drilling Corporation in:

a) Installing its ramp system on the Continental Oil Company platform without adequate knowledge of the weights of its

### Unseaworthiness Of SEADRILL XI

■ A further finding to inculpate Seadrill is not necessary in view of the positive holding of negligence so we do not have to resolve the issue.[15] However, there was ample evidence to warrant the Court's findings that SEADRILL XI was unseaworthy on the ground (among others equally valid) that the ramp-gangway system for ingress and egress and transfer of equipment and supplies was not reasonably fit for the use for which it was intended. Proof of this is the simple, but classically significant, fact that it failed under expected conditions.[16]

The fact that the ramp-gangway may have failed because of the break in the ramp support structure on the platform is of no consequence. The ramp was a part of the vessel's equipment.[17] As a means of ingress-egress and, more important, transfer of heavy articles, the sufficiency of the rig depended on the adequacy of the platform-end of the structure to bear the weight of the ramp and cargo to be landed on it. The vessel could not palm this off onto the platform owner, at best a sort of vicarious wharf owner.

### Choice Of Law

### On Liability

Thus far we have had to make none of the intricate choice-of-law decisions of

the kind with which we dealt at length in *Dearborn*.[18] For here on any basis—surrogate Louisiana law, DOHSA, or general maritime law (with or without unseaworthiness)—Conoco and Seadrill each are justifiably cast either jointly or separately for those distinctive elements of damages allowable under the body of law applicable to each.

### On Damages[19]

### Conscious Pain And Suffering

### Item (7)

But on damages the matter is not so easy, or more accurately, at least, it *was* not at the time the judgment was entered. The District Judge obviously recognized the problem. It is evident that for these flagrant faults he intended to make an award for every conceivable element of damages sustained by adequate proof and recoverable against one or the other or both, depending on the source of law chosen and applicable.

■ This is illustrated by conscious pain and suffering (Item 7, Col. (B)). Without regard to the dollar amount (discussed later) it is perfectly clear that such damage was suffered in fact. But at the time of judgment DOHSA then supplied the principal maritime remedy and no recovery for this under DOHSA

---

equipment and the mechanical effects of the installation.
b) Failing to secure competent engineering advice about the installation of its ramp system.
c) Adding the ramp support extensions without prior investigation of the mechanical effect of the alteration.
d) Overloading its ramp during unloading procedures.

**15.** See generally Delaneuville v. Simonsen, 5 Cir., 1971, 437 F.2d 597; Grigsby v. Coastal Marine, 5 Cir., 1969, 412 F.2d 1011; Walker v. Harris, 5 Cir., 1964, 335 F.2d 185, cert. denied, 379 U.S. 930, 85 S.Ct. 326, 13 L.Ed.2d 342.

**16.** Since the men were offloading the diesel hammer from vessel to platform, we can assume they were *Sieracki*-ambiguous amphibious seamen although In re Dearborn v. Marine Service, Inc., 5 Cir., 1974, 499 F.2d 263,

rehearing en banc denied, 512 F.2d 1061, might raise some doubts on analogizing this oil well exploratory drilling operation to the traditional, but ancient cargo handling by a Richard Dana's *Two Years Before The Mast* blue water seamen, which *Sieracki* transferred to landlubber longshoremen to become thereby vicarious seamen.

**17.** We have no difficulty finding that a vessel may be unseaworthy due to a defect in one of its extremities, such as the ramp in this case. The ramp here, as part of the ship's regular equipment, was the essential unloading apparatus used by the crew "in the service of the ship." See generally Deffes v. Federal Barge Lines, Inc., 5 Cir., 1966, 361 F.2d 422, 1966 A.M.C. 1415.

**18.** See note 16, *supra*.

---

**19.** See note 19 on page 249.

was allowable.[20] Consequently, the Court assessed it against the only party having a certain liability therefor—Conoco under surrogate Louisiana law.

The same was true of loss of love and affection (Item 6(a)(b)(c)(d), Col. (B)).[21] The converse was applied to loss of nurture, guidance and control (Item 8(a)(b)(c), Col. (C)) for which Seadrill was cast as DOHSA jurisprudence permitted.[22] Whether this is recoverable under Louisiana law was not determined and it may be that having saddled Cono-

**19.** The Court fixed and allocated damages as follows:

| | COL. (A) Adjudged Against Both Conoco And Seadrill | COL. (B) Adjudged Against Conoco Only | COL. (C) Adjudged Against Seadrill Only |
|---|---|---|---|
| (1) Loss of wages to date of trial | 24,100.00 | | |
| (2) Future loss of income | 159,398.00 | | |
| (3) Cost of living increase | 41,665.00 | | |
| Total | 225,163.00 | | |
| (4) LESS 15% attributable to Mr. Law's use | 33,774.45 | | |
| | 191,388.55 | | |
| (5) Medical and burial expenses | 851.77 | | |
| (6) Loss of love and affection | | | |
| (a) Mrs. Joan Francis Law | | 25,000.00 | |
| (b) Wesley J. Law, Jr. | | 10,000 00 | |
| (c) Sandra K. Law | | 10,000.00 | |
| (d) Larry J. Law | | 10,000.00 55,000.00 | |
| (7) Pain and suffering prior to death of Wesley J. Law, Sr. | | 15,000.00 | |
| (8) Loss of nurture, guidance and control to children during minority: | | | |
| (a) Wesley J. Law, Jr. | | | 7,000.00 |
| (b) Sandra K. Law | | | 8,000.00 |
| (c) Larry J. Law | | | 9,000.00 24,000.00 |
| TOTAL | $192,240.32 | $70,000.00 | $24,000.00 |

**20.** Brown v. Anderson-Nichols Co., D.Mass., 1962, 203 F.Supp. 489, The Culberson, 3 Cir., 1932, 61 F.2d 194.

**21.** Simpson v. Knutsen, O.A.S., 9 Cir., 444 F.2d 523, 525 (loss of consortium); In re United States Steel Corp., 6 Cir., 1970, 436 F.2d 1256, 1278, cert. denied sub nom. Lamp v. United States Steel Corp., 1971, 403 U.S. 940, 91 S.Ct. 2247, 29 L.Ed.2d 720 (loss of consortium, love, companionship and guidance to adult children); First National Bank in Greenwich v. National Airlines, Inc., 2 Cir., 1961, 288 F.2d 621 (loss of companionship and guidance to adult children); Middleton v. Luckenbach S.S. Co., Inc., 2 Cir., 1934, 70 F.2d 326. (companionship).

But see most recently Skidmore v. Grueninger, 5 Cir., 1974, 506 F.2d 716.

On the other hand, as the Judge held,

"Under Louisiana law, a widow and children may recover for loss of love and affection. Dobyns v. Yazoo and M. V. R. Co., 119 La. 72, 43 So. 934 (1907); Cf. Silverman v. Travelers Insurance Co. (5 Cir. 1960) 277 F.2d 257."

**22.** The Judge held:

"Under the Death on the High Seas Act, minor children may recover for loss of nurture, guidance and control. Moore-McCormack Lines, Inc. v. Richardson, 2 Cir., 1961, 295 F.2d 583, 588, cert. den., 1962,

co with $70,000 (Col. (B)) not then thought to be recoverable against Seadrill, the Judge moved from the woolsack to the quarter deck[23] to apply some nautical equity.

■■ But all of that has changed— not in the twinkling of an eye, to be sure, but changed by the steady flow of maritime standards. First came *Moragne*,[24] which overruling *The Harrisburg*,[25] recognized as a part of the general maritime law a right to recover for maritime wrongful death independent of a statute. We join the First Circuit in its recent *Barbe*[26] decision to now hold what we said in *Dennis*[27] that *Moragne* applies not only to navigable waters of the States, but to the High Seas as well, including the area defined in DOHSA.[28]

## Loss Of Love And Affection

### Item (6)

■ Next came *Gaudet*[29] in which, as a natural development from *Moragne*, the Court held that the wrongful death remedy available under maritime law included an assessment for loss of society. Specifically the Court declared:

> 368 U.S. 989, 82 S.Ct. 606, 7 L.Ed.2d 526 and cases cited therein."

We have so held: Grigsby v. Coastal Marine Service, 5 Cir., 1969, 412 F.2d 1011, 1042, cert. dismissed, 396 U.S. 1033, 90 S.Ct. 612, 24 L.Ed.2d 531.

23. Cates v. United States, 5 Cir., 1971, 451 F.2d 441; Compania Anonima Venezolana De Navegacion v. A. J. Perez Export Co., 5 Cir., 1962, 303 F.2d 692, 699, 1962 A.M.C. 1710, 1719, cert. denied, 371 U.S. 942, 83 S.Ct. 321, 9 L.Ed.2d 276; Hadjipateras v. Pacifica S.A., 5 Cir., 1961, 290 F.2d 697, 1961 A.M.C. 1417.

24. Moragne v. States Marine Lines, 1970, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339.

25. The Harrisburg, 1886, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358.

26. Barbe v. Drummond, 1 Cir., 1974, 507 F.2d 794. Others had earlier so held: Dugas v. National Aircraft Corp., 3 Cir., 1971, 438 F.2d 1386; Greene v. Vantage S. S. Corp., 4 Cir., 1972, 466 F.2d 159.

27. Dennis v. Central Gulf Steamship Corp., 5 Cir., 1972, 453 F.2d 137, cert. denied, 409 U.S.

The term "society" embraces a broad range of mutual benefits each family member receives from the others' continued existence, including love, affection, care, attention, companionship, comfort and protection. Sea-Land Services v. Gaudet, 414 U.S. at 585, 94 S.Ct. at 815, 39 L.Ed.2d at 21.

This means that allowance of loss of love and affection (Item 6(a)(b)(c)) need not be confined to Conoco (Col. (B)) but is assessable against Seadrill as well.

## Loss Of Nurture And Guidance

### Item (8)

■ This then leaves loss of nurture, guidance and control (Item 8(a)(b)(c)(d), Col. (B)) assessed against Seadrill.

Seadrill challenges this on the ground of duplication arguing that there is no essential difference between this award and the award given the entire Law family for the loss of love and affection against Conoco (Item 6(a)(b)(c), Col. (B)). We disagree for the distinction between the loss of love and affection and the loss of services such as nurturance, training, education and guidance of minor children has been accepted by both the

948, 93 S.Ct. 286, 34 L.Ed.2d 218. See In re Dearborn Marine Service, Inc., 499 F.2d at 288.

28. This takes care of pain and suffering (Item (4)) so that it is now properly allowable against Seadrill as well.

We reject Conoco's argument, which presumably Seadrill will now embrace, that the award of $15,000.00 was excessive.

The degree of Law's pain is shown by the fact that the injury to the pelvic area was so great that Law could not aid in his own rescue effort and remained in the water far longer than did the other two injured men. Secondly, to administer artificial respiration the crewman of the tender vessel had to straddle Law's crushed pelvic area thereby increasing the magnitude of whatever pain Law was capable of feeling at that time. The inhalation of water and the shock from his injuries resulted in his death.

29. Sea-Land Services, Inc. v. Gaudet, 1974, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9, 1974 A.M.C. 1893.

Supreme Court and this Court as well.[30] Indeed, the Supreme Court in *Gaudet* distinguished in successive paragraphs one from the other to thereby hold that both are recoverable under *Moragne* maritime law.[31]

Consequently, this was properly allowed against Seadrill (Item 8(a)(b)(c), Col. (C)) and so far as presently appears there is no basis for concluding that the Judge under Louisiana principles thought that he either should or could assess this against Conoco were Seadrill not liable under maritime principles.[32]

### Reductions In Future Earnings Attributable To Personal Expenses

 The Court in fixing the award for future loss of earnings made a 15% deduction (Item 4) for that portion of Wesley Law's earnings which he would have expended on his own behalf had he lived. Conoco certainly, and Seadrill perhaps, contend that this deduction was too small. However, we think the findings of the Court were amply justified on the record. Law was the father of three minor children at the time of his death. As supervisor of the Superior Casing Crew employees on the job site, he was furnished a company car for his own use, eliminating what is a major expense for most people. In addition, Conoco introduced no evidence that would indicate to us that the expenses of Law were any greater than the 10% attributed to him in his wife's estimates or the 15% used by the Court below.

### Inflationary Cost Of Living Increase

### Item (3)

In fixing the award for loss of future earnings the Court made an additional allowance for cost of living increase in the sum of $41,665.00 (Item 3).[33] We

---

**30.** Grigsby v. Coastal Marine Service, 5 Cir., 1969, 412 F.2d 1011, 1042, cert. dismissed, 396 U.S. 1033, 90 S.Ct. 612, 24 L.Ed.2d 531. *See also* Moore-McCormick Lines, Inc. v. Richardson, 2 Cir., 1961, 295 F.2d 583, 588.

**31.** Recovery for loss of support has been universally recognized,[11] and includes all the fi-
[11] See, *e. g.*, Michigan C. R. Co. v. Vreeland, 227 U.S. 59 at 70 [33 S.Ct. 192, 196, 57 L.Ed. 417 (1913)]; The S. S. Black Gull, 90 F.2d 619 (2 Cir. 1937) (interpreting the Death on the High Seas Act); Dugas v. National Aircraft Corp., 438 F.2d 1386 (3 Cir. 1971) (interpreting the Death on the High Seas Act); F. Tiffany, Death by Wrongful Act §§ 153, 160 (2d ed. 1913); S. Speiser, Recovery for Wrongful Death § 3.4 (1966) [(hereafter Speiser)]; W. Prosser, Law of Torts § 127, p. 906. Damages for loss of support have also been awarded consistently in post-*Moragne* maritime wrongful death actions. See, *e. g.*, Dennis v. Central Gulf Steamship Corp., 323 F.Supp. 943 [(D.C. La.1971)], aff'd, 453 F.2d 137 (5 Cir. 1972); Petition of United States Steel Corp., 436 F.2d 1256 (6 Cir. 1970); In re Cambria Steamship Co., 353 F.Supp. 691 (D.C. 1973); Mascuilli v. United States, 343 F.Supp. 439 (D.C. 1972); In re Sincere Navigation Corp., 329 F.Supp. 652 (D.C. 1971); Petition of Canal Barge Co., 323 F.Supp. 805 (D.C. 1971).
nancial contributions that the decedent would have made to his dependents had he lived. Similarly, the overwhelming majority of state wrongful-death acts and courts interpreting the Death on the High Seas Act have permit-

ted recovery for the monetary value of services the decedent provided and would have continued to provide but for his wrongful death. Such services include, for example, the nurture, training, education, and guidance that a child would have received had not the parent been wrongfully killed. Services the decedent performed at home or for his spouse are also compensable.

Compensation for loss of society, however, presents a closer question. The term "society" embraces a broad range of mutual benefits each family member receives from the others' continued existence, including love, affection, care, attention, companionship, comfort, and protection.

**32.** The net result of our holding with respect to Item 6(a)–(d) and Item 7 aggregating $70,-000.00 is to allocate these items equally as between Conoco and Seadrill.

**33.** With respect to future loss of earnings the Judge made these findings of fact:

45.

A reasonable discount rate for future loss of wages is 4%.

46.

Future loss of income from the death of Wesley Law calculated at $800.00 per month to life expectancy discounted at 4% is $159,-398.00.

47.

Cost of living increases and inflation would cause an increase in loss of income from the

have had to hold up this opinion since this issue was pending before the Court en banc in *Penrod*,[34] just decided,[35] by holding such inflationary damages are not recoverable.

### Cross Indemnity

 Both Conoco and Seadrill urge this Court to grant indemnity on several theories. The first is on the provisions of the contract. Seadrill points to the term requiring Conoco to provide an adequate platform on which to rest the ramp of the tender vessel. Conoco maintains that indemnity is justified because Seadrill had a duty (i) to examine and report all defects in equipment, (ii) to assume all responsibility for any loss caused by visible defects not called to the attention of the company, and (iii) to

perform with due diligence and in a workmanlike manner.

But reading the contract in the light of this record and the findings of the District Court on fault we think that under both Louisiana [36] law and general principles [37] the contract lacks the requisite specificity to allow either of these two parties found guilty of active negligence to recover indemnity as negligent indemnitees.

 The dying gasp at a WWLP under *Ryan* meets with a similar lack of success since we have repeatedly resisted all efforts to project this implied indemnity concept outside the special circumstances of the shipowner relationships that evoked the doctrine in the first place absent any contractual provisions in the underlying contracts.[38]

---

death of Wesley Law at a rate of 2% per year to work-life expectancy discounted at 4% for $41,665.00. Wesley Law was reasonably to be expected to increase his income based on the continued rise in his income reflected by his position and income tax returns.

**34.** Johnson v. Penrod, 5 Cir., 1972, 469 F.2d 897, reh. granted, 5 Cir., 478 F.2d 1208; Canal Barge Co. v. Griffith, 5 Cir., 1973, 480 F.2d 11, 34; In re Sincere Nav. Corp., E.D. La., 1969, 295 F.Supp. 610.

**35.** Johnson v. Penrod, 5 Cir., 1975, 510 F.2d 234 [Nos. 71–2243, 71–2245, March 21, 1975, slip opinion 234].

**36.** Cole v. Chevron Chemical Co-Oronite Div., 5 Cir., 1973, 477 F.2d 361; Gorsalitz v. Olin Mathieson Chem. Corp., 5 Cir., 1970, 429 F.2d 1033; Grigsby v. Coastal Marine Service of Texas, Inc., 5 Cir., 1969, 412 F.2d 1011, 1969 A.M.C. 1513.

Louisiana law is clearly to the effect that the failure of the parties to refer expressly to "negligence" in an indemnity contract is evidence of the parties intention not to provide indemnification for the indemnitee's negligent acts. Bagwell v. South Louisiana Electric Co-op Assoc., La.App.1969, 228 So.2d 555; Arnold v. Stupp Corp., La.App. 1967, 205 So.2d 797; *see* Plantation Pipeline Co. v. Kaiser Aluminum and Chemical Corp., La.App.1969, 222 So.2d 905; Elephant, Inc. v. Hartford Accident & Indemnity Co., La.App.1968, 216 So.2d 837; Brady v. American Insurance Co., La.App.1967, 198 So.2d 907. The parties' clear and unequivocal intent to indemnify against damages caused solely by the indemnitee's own negligence must be expressly articulated by

specific reference to "negligence." Otherwise, the presumption is that the indemnification is applicable only to vicarious responsibility of the indemnitee resulting from negligent acts of the indemnitor. Bagwell v. South Louisiana Electric Co-op Assoc., *supra*; Arnold v. Stupp Corp., *supra*; Gorsalitz v. Olin Mathieson Chemical Corp., 5 Cir. 1970, 429 F.2d 1033; and Grigsby v. Coastal Marine Service of Texas, Inc., 5 Cir. 1969, 412 F.2d 1011. *Compare* Jennings v. Ralston Purina Co., La.App. 1967, 201 So.2d 168.

Cole v. Chevron Chemical Co-Oronite Div., 5 Cir., 1973, 477 F.2d 361, 363.

**37.** United States v. Seckinger, 5 Cir., 1969, 408 F.2d 146, reversed as to the principles of indemnification to be applied to government contracts, 1970, 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224.

**38.** Ocean Drilling & Exp. Co. v. Berry Bros. Oilfield Serv., Inc., 377 F.2d 511, 513 (CA5), cert. denied, 389 U.S. 849, 88 S.Ct. 102, 19 L.Ed.2d 118 (1967). *Accord*, Smith Pet. Serv., Inc. v. Monsanto Chem. Co., 420 F.2d 1103, 1109–1111 (CA5 1970); Delta Engineering Corp. v. Scott, 322 F.2d 11 (CA5 1963), cert. denied, 377 U.S. 905, 84 S.Ct. 1164, 12 L.Ed.2d 176 (1964); Halliburton Co. v. Norton Drilling Co., 302 F.2d 431 (CA5 1962), cert. denied, 374 U.S. 829, 83 S.Ct. 1870, 10 L.Ed.2d 1052 (1963); Transcontinental Gas Pipe Line Corp. v. Mobile Drilling Barge, 424 F.2d 684, 693 (CA5), cert. denied sub nom. Ocean Drilling & Exp. Co. v. Signal Oil & Gas Co., 400 U.S. 832, 91 S.Ct. 65, 27 L.Ed.2d 64 (1970). Loffland Bros. Co. v. Roberts, 386

*Tag-Ends*

Lastly, we conclude that it was entirely proper for the District Court to award interest to run from the date of judicial demand against both defendants. National Airlines, Inc. v. Stiles, 5 Cir., 1959, 268 F.2d 400. Similarly, we believe that the award of $5,000 damages for the injury to LeBeouf was proper. Consequently we reverse as to Item (3) and delete this entirely from damages allowed.

Modified and as modified affirmed in part; reversed in part.

F.2d 540, 549 (CA5 1967), cert. denied, 389 U.S. 1040, 88 S.Ct. 778, 19 L.Ed.2d 830 (1968).

See most recently In Re Dearborn Marine Service, Inc., 499 F.2d 287, in which we again refused to extend this concept.