Sydney H. BLUMENTHAL, Administrator of the Estate of Donald W. Eastridge, Deceased, Libellant,

v.

UNITED STATES of America, Respondent-Appellant.

No. 13635.

United States Court of Appeals Third Circuit.

Argued Jan. 22, 1962.

Decided July 12, 1962.

Sherman L. Cohn, Washington, D. C. (William H. Orrick, Jr., Asst. Atty. Gen., Joseph S. Lord, III, U. S. Atty., Alan S. Rosenthal, Attorneys, Department of Justice, Washington, D. C., on the brief), for appellant.

Milton M. Borowsky, Philadelphia, Pa. (Abraham E. Freedman, Freedman, Landy & Lorry, Philadelphia, Pa., on the brief), for respondent.

Before KALODNER, STALEY and SMITH, Circuit Judges.

STALEY, Circuit Judge.

Donald W. Eastridge, an employee of the Philco Corporation, was assigned as a technical representative of the Air Force in the Far East under a contract between Philco and the United States. In pursuance of his duties, Eastridge boarded a Marine Corps airplane in

Korea for travel to Japan. While over the Sea of Japan, engine trouble necessitated a bail-out by all passengers, including Eastridge, who was drowned. Immediately before the bail-out order was given, the pilot radioed the Air Traffic Control Center at Taegu, Korea, stating what had happened and giving his position. That information, however, was incorrectly transmitted by personnel at Taegu to the Rescue Control Center of Fifth Air Force, thereby impeding rescue operations.

Libellant, administrator of Eastridge's estate, commenced this action in admiralty under the Death on the High Seas Act, 46 U.S.C.A. § 761 et seq., for damages, alleging that Eastridge's death was caused by the negligence of the respondent United States. The district court found respondent negligent and entered judgment for libellant.[1]

Respondent does not take the position that this action was improperly brought in admiralty, nor that it has not waived its immunity under the Death on the High Seas Act when the negligent act or omission occurs on the high seas. It points out that § 1346(b) of the Federal Tort Claims Act ("FTCA"), 28 U.S.C.A. § 1346(b), requires that the respondent's liability be determined in accordance "with the law of the place where the act or omission giving rise to the liability occurred." [2] Even though this is an admiralty action, the respondent contends that the recent Supreme Court decision in Richards v. United States, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962), requires that its liability be determined in accordance with the law of the place where the negligent acts occurred without regard to the law prevailing at the place where the injury was inflicted. It

says that the district court here found that the place of the negligent acts was either Japan, where the plane was based and where the alleged failure to inspect and properly maintain the aircraft occurred, or Korea, where the neglect was that of Air Control in transmitting inaccurate information to Rescue Control concerning the type of aircraft involved and the point where it went down, and to a lesser extent on the part of the latter in not checking back after the first attempt at rescue failed. That being so, it says libellant's claim is barred by § 2680(k) of the FTCA, which excepts "any claim arising in a foreign country" from the waiver of sovereign immunity.

We think that respondent's construction of the district court's findings is too narrow, relying as it does on specific words rather than giving full play and effect to all of the findings and conclusions of law. The district court, under our interpretation, found respondent negligent in operating an aircraft which was uninspected and improperly maintained, and in using it to transport personnel although restricted to cargo. It is, therefore, unnecessary to pass on the question of whether the Richards decision, which involved a multistate land tort, applies to a suit in admiralty, for, even assuming for the purpose of our decision that it does apply, it is clear to us that the district court's findings require an affirmance.

This court had occasion in Zimmerman v. Montour R. R. Co., 296 F.2d 97 (C.A.3, 1961) cert. denied, 369 U.S. 828, 82 S.Ct. 845, 7 L.Ed.2d 793 (1962), to articulate what our approach is in construing a district court's findings of fact, and said that those findings "should be construed liberally and found to be in con-

1. The opinion of the district court is reported at 189 F.Supp. 439 (E.D.Pa. 1960).

2. § 1346 in pertinent part provides: "* * * the district courts * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, * * * for * * * personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government * * * under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C.A. § 1346(b).

sonance with the judgment, so long as that judgment is supported by the evidence in the record." 296 F.2d at 98. That was a restatement of what others have held on the same question. E. g., Triangle Conduit & Cable Co. v. Federal Trade Commission, 168 F.2d 175 (C.A. 7, 1948), affirmed sub. nom. Clayton Mark & Co. v. Federal Trade Commission, 336 U.S. 956, 69 S.Ct. 888, 93 L.Ed. 1110 (1949).

■ Here, the district court found that the accident which gave rise to this suit occurred on the return leg of a regularly scheduled flight between Japan and Korea. The aircraft took off from Korea at 1225 local time. At 1434, while cruising at a normal power speed, all instruments showing normal, a sudden violent vibration commenced in the plane. The left propeller was feathered, and shortly thereafter the left engine and propeller fell off the plane. The pilot in the meantime turned the plane back towards Korea. The court found that proper inspection, installation and maintenance of the aircraft would have prevented the malfunction, and that it was the accident that gave rise to the action. Of course, those failures could not form the basis for an action in negligence unless the aircraft had been operated. Thus, it is clear that the district court found that the subsequent operation of the aircraft on which the left engine and propeller were improperly installed, maintained, or inspected constituted culpable negligence. Indeed, the evidence convincingly established that the defendant should have known of these derelictions, and that operating the aircraft under such circumstances would probably result in disaster.

The district court also found respondent negligent in transporting civilian passengers on the aircraft. One of the crewmen testified that the aircraft was restricted to "freight only." In order to avoid the effect of this restriction, an Air Force officer who was taken aboard the aircraft was listed as a special crewman, when in fact he was only a passenger. There was testimony in the record that the aircraft had inadequate survival equipment aboard, and was so constructed that it could not be successfully ditched.[3]

The record discloses that our interpretation of the district court's finding that negligence occurred in operation of the plane coincided with what the respondent understood the issues to be. After the district court filed its findings of fact and conclusions of law, respondent submitted a brief to that court in which it said:

"The allegations of negligence which have been advanced by libellants are:

\*　\*　\*　\*　\*　\*

"(2) Violation of an alleged 'freight only' restriction.

\*　\*　\*　\*　\*　\*

"(8) The R4Q–1 is allegedly an unsafe plane for carrying passengers over water."

In its proposed findings of fact and conclusions of law, respondent stated that libellant claimed negligence in five instances, including violation of the alleged "freight only" restriction and use of an allegedly unsafe plane for transporting passengers over water.

There is overwhelming evidence in the record to support the findings of the district court, and respondent, of course, does not challenge them.

The judgment of the district court will be affirmed.

WILLIAM F. SMITH, Circuit Judge (concurring).

Judge KALODNER and I are in complete agreement with the views expressed by Judge STALEY but desire to imple-

---

3. T.O. No. IC-119B-1, revised January 15, 1954, "Handbook Flight Operating Instructions," reads as follows:

"3-60. The cargo compartment may flood very rapidly when the airplane is ditched. For this reason any personnel carried in the cargo compartment should bail out rather than ditch."

ment what he has said with these observations:

The respondent here argues that the only negligent acts or omissions found by the trial judge were those which occurred within the territorial limits of Japan and Korea, and that therefore the claim for damages was one "arising in a foreign country," and within the pertinent exception of the Federal Tort Claims Act. 28 U.S.C.A. 2680(k). The argument is predicated upon a narrow construction of the findings of fact. We are of the opinion that these findings must be read in their entirety, and as thus read, accorded an interpretation broader than that given to them by the respondent.

The findings of fact, exclusive of those pertaining to the issue of damages, are contained in fifteen numbered paragraphs. The argument of the respondent seems to rest primarily, although not entirely, on the fourteenth paragraph, which reads as follows:

"The vibration which shook the left engine loose from its mounting was produced by a propeller imbalance not induced by any external force or the breaking of any of the propeller blades. Despite some evidence to the contrary, proper inspection, installation and maintenance of the left engine and propeller would have prevented THIS MALFUNCTION and the ineffective feathering of the propeller on June 4, 1954." (Emphasis by this Court).

This finding, as we interpret it, refers only to the malfunction of the propeller as the cause of the vibration. When considered in the light of the related findings it may not be interpreted as a factual determination by the trial judge that the exact cause of the accident was the malfunction of the propeller.

There is evidence in the record that the aircraft was so constructed that it could remain airborne on a single engine, and, barring other mechanical failure, could have returned safely to the base in Korea if the disabled engine had not been torn from its mounting by the excessive vibration. There is further evidence that the immediate cause of the disaster was the loss of the engine.

The ultimate findings of the trial judge are summarized in the fifteenth paragraph, which reads as follows:

"The procurement, installation, maintenance and OPERATION of [the aircraft] was exclusively under the control of the respondent. The failure of the left propeller and loss of the left engine should not occur in the absence of negligence. Under the circumstances of this case, and particularly since the aircraft and libellant were lost in the Sea of Japan more than a nautical league off K-3 Korea, the libellant is entitled to the benefit of the doctrine of *res ipsa loquitur*. The failure of the respondent to explain satisfactorily the malfunction of the propeller and its failure to feather and THE SHAKING LOOSE OF THE LEFT ENGINE AND ITS DROPPING INTO THE SEA leads to the conclusion that the respondent was negligent." (Emphasis by this Court).

When this summary is read in the light of the specific findings of fact which precede it, it is clear that the trial judge found that the respondent had failed to explain satisfactorily either the malfunction of the propeller or the loss of the engine, the immediate cause of the disaster. The conclusion that the respondent was negligent was predicated on the respondent's failure to offer a satisfactory explanation under the rule of res ipsa loquitur. The conclusion was obviously based upon a consideration of the evidence as a whole.

■■ The aircraft was under the exclusive management and control of the respondent, and in the absence of any evidence as to the precise cause of the accident, the facts and circumstances surrounding its occurrence justified the application of the rule of res ipsa loquitur. Weigand v. Pennsylvania Railroad Company, 267 F.2d 281 (3 Cir. 1959).

**20**

We are of the opinion that the law of admiralty was determinative of the respondent's liability in the absence of evidence that the accident resulted solely from an act or omission which occurred within the territorial limits of Japan and Korea.