Arla **BODDEN**, et al.,
**Plaintiffs-Appellees,**

v.

**AMERICAN OFFSHORE, INC.,**
**Defendant,**

**American Operators, Inc., and Zodiac Workboats, S. A.,**
**Defendants-Appellants.**

No. 81–2081.

United States Court of Appeals,
Fifth Circuit.

July 26, 1982.

---

**320**

Jack L. Allbritton, Houston, Tex., for defendants-appellants.

Horton, Perse & Ginsberg, Arnold R. Ginsberg, Miami, Fla., for plaintiffs-appellees.

Before BROWN, GOLDBERG and GEE, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

This case presents for our decision a narrow question of first impression, one for whose answer we must gingerly navigate through the channel left by the *Moragne-Gaudet-Higginbotham* triumvirate of recent Supreme Court pronouncements on the admiralty. Does the surviving spouse of a seaman have a cause of action for wrongful death based on unseaworthiness pursuant to the Death on the High Seas Act where the decedent prior to his death settled his claim for the injuries? In answering this seemingly simple question, we consult—at some length—the recent decisions in the Supreme Court and this Circuit, lest we unknowingly sail into treacherous waters. After giving careful consideration to the arguments and cases, and anxious to be faithful to the spirit of the admiralty, we conclude that the spouse does have such a cause of action, and so we affirm.

### Prologue

Neither of the briefs presents the dispositive facts in clear relief, but piecing together the clues they provide, we find that Arla Bodden's husband, Silbert Bodden, a resident of Honduras, suffered severe injuries in January 1975 while serving as chief engineer on the M/V POLAR 901 in the North Sea. An engine room explosion knocked Bodden unconscious, and he spent a month in a Scotland hospital with scalp lacerations, a concussion, and a fractured jaw. Bodden brought suit against his employer, American Offshore, Inc., the owner of the vessel, Zodiac Work Boats, S.A., and American Operators, Inc., but settled his claim in late 1975.[1]

After his discharge from the hospital, Bodden continued to suffer neck, jaw and facial pain and headaches. From late February until late May 1975, Dr. Turke periodically examined and treated him. He referred Bodden to Dr. Gilbert, a neurologist and psychiatrist, who performed an electroencephalogram (EEG). The EEG revealed permanent brain damage as a result of the concussion. Gilbert continued to treat Bodden for his headaches until June 1975. While believing that they would continue for some time, he felt that Bodden could return to work.

Bodden did return to work, and steadily so, mentioning the headaches only irregularly. The record indicates that Bodden was rather stoic and feared losing his job, so he remained quiet as to the extent of his suffering. He represented himself as fit on job applications and during physical exams. Yet his wife testified that he continued in private to complain about the headaches. In March 1978, Bodden returned home to Honduras for his annual six-week vacation—the only time he saw his family during the year. Arla Bodden testified that he could not sleep and suffered severe daily headaches that left him partially bedridden. Other witnesses confirmed that Bodden complained of headaches during this period.

On April 21, 1978, Bodden was found hanged from a tree by his belt. His death was classified as suicide.

---

1. Bodden executed a release on December 15, 1975, of all of his claims in exchange for $17,-500. The release states "I fully understand that this is a complete and final release and that no more money is ever to be paid *to me* because of the injuries and illnesses mentioned above." (emphasis added)

Arla Bodden brought this wrongful death action in the Southern District of Texas, alleging jurisdiction under the Jones Act and general maritime law. The jury, replying to special interrogatories,[2] found no negligence but did find that POLAR 901 was unseaworthy and that the unseaworthiness was a legal cause of Bodden's death.[3] It assessed damages of $177,000 for Arla Bodden and her four children.[4] The District Court held Zodiac Work Boats and American Operators, Inc. jointly and severally liable for that amount.[5] They appeal.

### When the Supreme Court Talks . . .

We begin by considering the trinity of Supreme Court opinions that have developed the maritime wrongful death action, for these decisions constitute the chart by which we plot our course through sometimes unexplored waters. Indeed, we must pay special heed to the Court's pronouncements because through their pendulum-like approach they have engendered heavy seas in what previously were calm waters.[6]

In *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339, 1970 A.M.C. 967 (1970) (territorial waters), *overruling The HARRISBURG*, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886), the Supreme Court created a right to recover for wrongful death under federal general maritime law.[7] Edward Moragne, a longshoreman, was killed while working aboard the vessel PALMETTO STATE in Florida navigable waters. His widow, alleging negligence and unseaworthiness, brought an action in state court to recover damages for wrongful death and for her husband's pain and suffering. States Marine removed to federal court on the basis of diversity of citizenship of the parties, then moved to dismiss that portion of Mrs. Moragne's complaint relying upon unseaworthiness. The District Court granted the motion. It held that maritime law provided no recovery for wrongful death within a state's territorial waters and that Florida law did not encompass unseaworthiness as a basis for liability. On appeal, this Court certified to the Florida Supreme Court the question whether state law permitted recovery for unseaworthiness.[8] The Supreme Court answered

2. Hail special verdict, well met. This Court has often urged the District Courts to employ this handy, indeed invaluable, device. *See Jones v. Miles*, 656 F.2d 103 (5th Cir. 1981), and cases cited. *See generally* Brown, *Federal Special Verdicts: The Doubt Eliminator* 44 F.R.D. 338 (1967).

3. *See Symonette Shipyards, Inc. v. Clark*, 365 F.2d 464, 1966 A.M.C. 2383 (5th Cir. 1966), *cert. denied*, 387 U.S. 908, 87 S.Ct. 1690, 18 L.Ed.2d 625 (1967) (unseaworthiness and Death on the High Seas Act claim).

4. The parties do not dispute the trial court's allocation of damages. The sole question before us is whether Arla Bodden had a cause of action at all. The judgment provides:

It is ORDERED AND ADJUDGED:

That the Plaintiffs recover of the Defendants, ZODIAC WORK BOATS, S.A. and AMERICAN OPERATORS, INC., jointly and severally with interest thereon at the rate of 9% (nine percent) as provided by law, and their costs of action, as follows:

| | |
|---|---|
| Mrs. Arla Bodden | $158,200.00 |
| Ernie Bodden, a minor | 3,750.00 |
| Yvette Bodden, a minor | 4,450.00 |
| Lucinda Bodden, a minor | 550.00 |
| Shawne Bodden, a minor | 10,500.00 |
| TOTAL | $177,450.00 |

5. Defendant American Offshore was not held liable to Bodden.

6. "So long as the volcano continues in eruption, no charts can be guaranteed reliable even until the next term of Court. Many of the old landmarks have disappeared for good. New ones have been tossed up, which may or may not be permanent additions to the map. There are unsuspected reefs whose existence will be determined by the usual method of hit or miss. The perils of the sea, which mariners suffer and shipowners insure against, have met their match in the perils of judicial review." Gilmore & Black, *The Law of Admiralty* § 6–1, at 272 (2d ed. 1975).

7. *See 2 Benedict on Admiralty* §§ 81, 82 (7th ed. 1980); Gilmore and Black § 6–32; George and Moore, *Wrongful Death and Survival Actions Under the General Maritime Law: Pre-Harrisburg Through Post-Moragne*, 4 J.Mar.L. & Comm. 1 (1972).

8. We trace the certification procedure in Florida cases in *In re McClintock*, 558 F.2d 732, 733 n.2 (5th Cir. 1977). *See generally* Brown, *Certification—Federalism in Action*, 7 Cumber.L. Rev. 455 (1977).

the question in the negative, and we then affirmed the District Court's order, 409 F.2d 32, 1969 A.M.C. 694 (5th Cir. 1969).

The Supreme Court granted certiorari, 396 U.S. 900, 90 S.Ct. 212, 24 L.Ed.2d 176 (1969), and reversed. Referring to the "special solicitude for the welfare of those men who undertook to venture upon hazardous and unpredictable sea voyages," 398 U.S. at 387, 90 S.Ct. at 1780, 26 L.Ed.2d at 349, 1970 A.M.C. at 977, Justice Harlan, writing for a unanimous Court, held that the brethren must exercise their "duty . . . to perceive the impact of major legislative innovations and to interweave the new legislative policies with the inherited body of common-law principles. . . ." 398 U.S. at 392, 90 S.Ct. at 1783, 26 L.Ed.2d at 351, 1970 A.M.C. at 980–81. The legislative policy to which he referred was the abrogation of common law rules disfavoring causes of action for wrongful death.[9] The rule of *Baker v. Bolton*, holding that "[i]n a civil Court, the death of a human being could not be complained of as an injury," 1 Camp. 493, 170 Eng.Rep. 1033 (1808), governed both in England and in the United States during the 19th century.[10] That rule, which derived from the notion of "felony-merger",[11] together with the asserted difficulty of computing damages for the loss of a life, combined to prevent the creation in this country of a common law action for wrongful death. The Court in *The HARRISBURG* had concluded that the admiralty had to follow the common law.

The "wholesale abandonment" of the rule in the interim, Harlan concluded, coupled with the growing availability of wrongful death causes of action under state law and federal statutes, *e.g.*, Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.* (Railroad Employees); Jones Act, 46 U.S.C. § 688 *et seq.* (merchant seamen); and Death on the High Seas Act (DOHSA), 46 U.S.C. § 761 *et seq.* (persons on the high seas), so eroded the foundation of *The HARRISBURG* that, if ever correct, it was so no longer.[12]

Harlan then examined the DOHSA regime for any indications that Congress intended to preclude judicial allowance of a remedy for wrongful death. Relying upon the legislative history, he unearthed no such intention. Congress enacted DOHSA, he found, to bring the United States in line with "enlightened nations" that recognized an action for wrongful death at sea. It only legislated up to the three-mile limit

> because that was the extent of the problem. The express provision that state remedies in territorial waters were not disturbed by the Act ensured that Congress' solution of one problem would not create another by inviting the courts to find that the Act pre-empted the entire field, destroying the state remedies that had previously existed.

398 U.S. at 398, 90 S.Ct. at 1786, 26 L.Ed.2d at 355, 1970 A.M.C. at 985. Not wishing accidentally to destroy a pre-existing state cause of action, Congress dealt only with the high seas—an area into which the states could not constitutionally reach. As Congress "could not have . . . foreseen", 398

---

**9.** *See* Day, *Maritime Wrongful Death and Survival Recovery: The Need for Legislative Reform,* 64 Colum.L.Rev. 648, 653–54 (1964).

**10.** The Fatal Accidents Act (commonly called Lord Campbell's Act), 9 & 10 Vict., c. 93 (1846), created a statutory wrongful death action in England but did not deter the *Harrisburg* court.

**11.** Justice Harlan pointed out that this doctrine, which held that a claim arising out of felonious conduct in effect merged into the felony and could not support a civil cause of action, never was followed in this country. Therefore the rule, lacking a solid jurisprudential foundation, never should have infected the admiralty.

**12.** "Historically, the only duty owed to the survivors of a deceased seaman, irrespective of the cause of his death, was the payment of wages and the return of his effects. . . . To fill the void, the Court resorted to state wrongful death statutes to grant redress for maritime deaths." This crazy quilt pattern of state and federal remedies for wrongful death, however, proved impossible to reconcile. "The remedies presently available to redress wrongful death under both federal and state law appear to be non-fitting pieces to a puzzle." Sims, *The American Law of Maritime Personal Injury and Death: An Historical Overview,* 55 Tul.L.Rev. 973, 1004, 1008 (1981).

U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339, 1970 A.M.C. at 986, the discrepancy between the remedies for deaths covered by DOHSA and for deaths covered by a state statute that did not include unseaworthiness as a basis of liability, the Court felt obliged to remedy that discrepancy. DOHSA, in other words, was not dumped overboard; it merely did not apply to the situation that confronted the Justices.[13]

Justice Harlan added that recognition of a wrongful death action under general maritime law would expunge three anomalies of the admiralty which DOHSA perpetuated. Within territorial waters, unseaworthiness produced liability if the victim was injured, but not if he were killed. Identical breaches of the duty to provide a seaworthy ship produced liability outside the three-mile limit [14] but not within a state's navigable waters unless state law so provided. Finally, what Harlan termed the " 'strangest' anomaly", a true Jones Act seaman lacked any remedy for death caused by unseaworthiness within territorial waters, while a longshoreman, doing the work of a seaman, would have such a remedy. Emphasizing the necessity for uniformity, Harlan stated,

> Our recognition of a right to recover for wrongful death under general maritime law will assure uniform vindication of federal policies, removing the tensions and discrepancies that have resulted from the necessity to accommodate state remedial statutes to exclusively maritime substantive concepts.

398 U.S. at 401, 90 S.Ct. at 1788, 26 L.Ed.2d at 357, 1970 A.M.C. at 987.

### The Mystery of Footnote 10

The second thunderbolt from on high came in *Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9, 1973 A.M.C. 2572 (1974).[15] Helen Gaudet's husband, a longshoreman, was severely injured aboard Sea-Land's vessel SS CLAIBORNE in Louisiana navigable waters. He brought an action based on unseaworthiness, in which he recovered damages for past and future wages, pain and suffering, and medical and incidental expenses. Shortly after the action terminated, Gaudet died. Helen Gaudet then brought a wrongful-death action in federal court. The District Court dismissed the claim on grounds of res judicata and failure to state a claim.[16] On appeal to this Court, we reversed, holding that "Mrs. Gaudet retained a compensable cause of action for Mr. Gaudet's death wholly apart from and not extinguished by the latter's recovery for his personal injuries...." 463 F.2d 1331, 1332, 1972 A.M.C. 2573, 2574 (5th Cir. 1972). As Judge, now Chief Judge, Clark put it, "such an action is

---

**13.** *See* Gilmore and Black, *supra* § 6–33, at 369: *Moragne* "reduced both DOHSA and the FELA death provisions incorporated in the Jones Act to the level of nonstatutory restatements."

**14.** A claim under DOHSA may be predicated upon unseaworthiness, *Kernan v. American Dredging Co.*, 355 U.S. 426, 430 n.4, 78 S.Ct. 394, 397, 2 L.Ed.2d 382, 387, 1958 A.M.C. 251, 255 (1958).

**15.** "While *Moragne* left open for later consideration by district and circuit courts the question of recoverable damages in actions predicated upon the general maritime law the Court by its five-four decision in *Gaudet* was not at all reluctant to review the entire issue of monetary damages and qualified survivors pursuant to the terms of the general maritime law." Schill, *Moragne-Gaudet: Three If By Sea?*, 13 Hous.L. Rev. 917, 922 (1976).

**16.** Justice Powell, in dissent, commented acerbically: "After her husband's judgment was affirmed on appeal, Mrs. Gaudet commenced this action by, in essence, changing a few lines in her husband's complaint and filing it again in the same United States District Court as a *Moragne* wrongful death action. That court's dismissal of Mrs. Gaudet's complaint on res judicata grounds is hardly surprising, given the striking similarity between the two Gaudet complaints. Both complaints were based on the maritime doctrine of unseaworthiness, a condition that Mrs. Gaudet alleged was established as a matter of res judicata by Mr. Gaudet's successful lawsuit.... The same facts and injuries were alleged.... Both sought recovery, in the amount of $250,000.... Thus, on the face of the complaints, Mrs. Gaudet apparently sought recovery solely for elements of damages that had been encompassed by her husband's judgment." 414 *U.S.* at 611, 94 *S.Ct.* at 828, 39 L.Ed.2d at 35, 1973 A.M.C. at 2601–02 (Powell, J., dissenting).

not one that can be sued out, sold out, compromised, or lost by the deceased's actions or inaction before it ever comes into being." 463 F.2d at 1336, 1972 A.M.C. at 2580.

On certiorari, the Supreme Court affirmed our holding. Justice Brennan, in an expansive reading of *Moragne*, stated:

Since the policy underlying the remedy is to ensure compensation of the dependents for *their* losses resulting from the decedent's death, the remedies should not be precluded merely because the decedent, during his lifetime, is able to obtain a judgment for his own personal injuries.

414 U.S. at 583, 94 S.Ct. at 814, 39 L.Ed.2d at 19, 1973 A.M.C. at 2580. Distinguishing those cases which held that recovery during the decedent's lifetime barred an action for wrongful death,[17] he pointed out that they rested "not . . . so much upon principles of res judicata or public policy as upon statutory limitations on the wrongful-death action." 414 U.S. at 579, 94 S.Ct. at 812, 39 L.Ed.2d at 18, 1973 A.M.C. at 2577. As *Moragne* established a "judge-made" maritime wrongful-death remedy independent of statute, those prior cases did not control.

As to damages, Justice Brennan conceded the possibility of double liability but confidently predicted that the courts, exercising their sound discretion, could avoid such problems.[18] Among the items for which the Court allowed recovery were "loss of support, services, and society, as well as funeral expenses." 414 U.S. at 584, 94 S.Ct. at 814, 39 L.Ed.2d at 20, 1973 A.M.C. at 2581.

In footnote 10, Justice Brennan brushed away claims that the decision violated the terms and long-standing judicial interpretation of DOHSA.

Significantly, the Death on the High Seas Act[,] the only federal statute "that deals specifically and exclusively with actions for wrongful death . . . for breaches of

the duties imposed by general maritime law [*Moragne*]," . . . has not been interpreted, as the FELA has been, to bar wrongful-death recovery in cases where the decedent has already recovered during his lifetime for his personal injuries.

414 U.S. at 583, n.10, 94 S.Ct. at 814, 39 L.Ed.2d at 19, 1973 A.M.C. at 2580. Justice Brennan cited no authority, and we have discovered none to support this proposition. In Arla Bodden's claim may lie the answer to the mystery of footnote 10.

In dissent, Justice Powell deplored what he termed "a nearly total nullification of the Congressional enactments previously governing maritime wrongful death." 414 U.S. at 595, 94 S.Ct. at 819, 39 L.Ed.2d at 26, 1973 A.M.C. at 2589 (Powell, J., dissenting). He predicted—and accurately so, *see Law v. Sea Drilling*, 510 F.2d 242, 1977 A.M.C. 2379 (5th Cir. 1975), *on rehearing*, 523 F.2d 793, 1977 A.M.C. 2394 (5th Cir. 1975)—that "no one entitled to rely on the admiralty doctrine of unseaworthiness will, after today, seek relief under the federal maritime wrongful-death statutes." 414 U.S. at 595, 94 S.Ct. at 819, 39 L.Ed.2d at 26, 1973 A.M.C. at 2589. Arguing that "two opportunities for jury sentiment crossed the line between benignity and bonanza," 414 U.S. at 610, 94 S.Ct. at 827, 39 L.Ed.2d at 35, 1973 A.M.C. at 2601, he also foresaw the predicament in which we now lie.

Thus, it would be possible in theory for a person injured at sea to recover for his personal injuries and, following his death, for his survivors to attempt to bring suit under the High Seas Act. But certainly the Act would not be read as allowing the subsequent action.

414 U.S. at 600, 94 S.Ct. at 822, 39 L.Ed.2d at 29, 1973 A.M.C. at 2593. Or would it? To that question, we address ourselves.

---

17. *See, e.g., Mellon v. Goodyear*, 277 U.S. 335, 345, 48 S.Ct. 541, 544, 72 L.Ed. 906, 910 (1928); *Michigan C. R. Co. v. Vreeland*, 227 U.S. 59, 69, 33 S.Ct. 192, 195, 57 L.Ed. 417, 421 (1913).

18. "Any potential for such double liability can be eliminated by the application of familiar

principles of collateral estoppel to preclude a decedent's dependent from attempting to relitigate the issue of the support due from the decedent's future wages." 414 U.S. at 592, 94 S.Ct. at 818, 39 L.Ed.2d at 25, 1973 A.M.C. at 2587.

Our answer is governed, at least in part, by the third of the Supreme Court's forays into the admiralty. *Mobil Oil Corporation v. Higginbotham*, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581, 1978 A.M.C. 1059 (1978), which one author has described in non-nautical terms as "another blockbuster in the area of wrongful death damages",[19] plays Scylla to *Gaudet*'s Charybdis. Mobil Oil ferried workers to an oil rig in the Gulf of Mexico, about 100 miles off the shore of Louisiana, by helicopter. In 1967, the helicopter crashed, killing the pilot and three passengers. The passengers' widows brought suit in admiralty. The District Court awarded damages for pecuniary losses but refused to award damages for loss of society, holding that DOHSA did not authorize recovery for that loss. This Court reversed,[20] *Mobil Oil Corporation v. Higginbotham*, 545 F.2d 422, 1977 A.M.C. 292 (5th Cir. 1977), holding that *Moragne-Gaudet* permitted damages for loss of society.

Justice Stevens, writing for the Supreme Court, trimmed our sails. In both *Moragne* and *Gaudet*, he observed, the incidents took place in territorial waters, where DOHSA by its terms does not apply. Their holdings did not extend beyond the three-mile limit. The Court's "policy determination" in *Gaudet* conflicted with Congress' determination in DOHSA. Since the helicopter crashed outside territorial waters, DOHSA alone controlled.[21]

While taking note of the policy arguments in favor of recovery for loss of society, Justice Stevens found his hands tied. "[W]e need not pause to evaluate the opposing policy arguments. Congress has struck the balance for us. It has limited survivors to recovery of their pecuniary losses. . . ." 436 U.S. at 624, 98 S.Ct. at 2014, 56 L.Ed.2d at 586, 1978 A.M.C. at 1064. "The Act does not address every issue of wrongful death law . . . but when it does speak directly to a question, the courts are not free to 'supplement' Congress' answer so thoroughly that the Act becomes meaningless." 436 U.S. at 625, 98 S.Ct. at 2015, 56 L.Ed.2d at 587, 1978 A.M.C. at 1065. DOHSA, arguably washed overboard in the wake of *Gaudet*, was saved by Justice Stevens' lifeline and resumed its place at the helm.

In its most recent treatment of this issue, the Supreme Court extended *Gaudet* to permit damages for loss of society where the victim was not killed, but merely injured. *American Export Lines, Inc. v. Alvez*, 446 U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284, 1980 A.M.C. 618 (1980) (territorial waters). Gilberto Alvez, a lasher on board the SS EXPORT BUILDER, lost an eye in the course of his employment. He brought suit against American Export Lines, the vessel's owner, and sought leave to add his wife as a plaintiff for loss of society. Upholding the

---

**19.** Edelman, *Recovery for Wrongful Death Under General Maritime Law*, 55 Tul.L.Rev. 1123, 1148 (1981).

**20.** The panel members expressed their disagreement but explained that our prior panel decision in *Law v. Sea Drilling, supra,* foreclosed consideration of the question whether DOHSA constituted the exclusive wrongful death remedy outside territorial waters. 545 F.2d at 436, n.19, 1977 A.M.C. at 312. The Supreme Court, it suffices to say, suffered no such compunctions and expressly disapproved our earlier holding, 436 U.S. at 619, n.1, 98 S.Ct. at 2011, 56 L.Ed.2d at 583, 1978 A.M.C. at 1060, in reversing the *Higginbotham* panel. The prior decision, obviously is no longer good *Law*.

**21.** *Higginbotham* spawned an entire generation of articles, some complimentary, some not. *See* Maraist, *Maritime Wrongful Death—Higginbotham Reverses Trend and Creates New Questions*, 39 La.L.Rev. 81, 96 (1978): "[T]he decision represents a startling reversal of the judicial trend toward uniformity and liberal recovery begun eight years ago in the unexpected and celebrated decision in *Moragne. . . .* In *Moragne*, Justice Harlan dwelled upon the anomalies which had arisen in maritime wrongful death law, because of the lack of a common law theory of recovery. Now, eight years after the court created a common law right of recovery, the area remains riddled with anomalies." *See also* Paltell, *Damage under DOHSA; Loss of Society and Funeral Expenses*, 11 J.Mar.L. & Conn. 139, 144 (1979): "By clinging to the literal meaning of the words of DOHSA, the *Higginbotham* majority avoids a confrontation with Congress and acknowledges the superiority of a duly enacted statute over judicial reform. In so doing, it creates a 'new and unfair anomaly of the type that *Moragne* was intended to eliminate.' In effect, homage to statutory language is rendered at the expense of logic, uniformity and fairness."

New York Court of Appeals, the Supreme Court found no reason to "cabin [*Gaudet's*] application to wrongful death," 446 U.S. at 281, 100 S.Ct. at 1677, 64 L.Ed.2d at 291, 1980 A.M.C. at 623, and permitted the wife's claim. Only four members of the Court concurred in Justice Brennan's opinion; Justice Powell concurred in the holding alone on the ground that no rational distinction between fatal and non-fatal injuries existed.

### ... We Listen

The Fifth Circuit, a familiar face if not a charter member at the admiralty, frequently has had occasion to assess and apply the *Moragne-Gaudet-Higginbotham* line of cases.[22] In analyzing those decisions, we take careful note of *where* the accident took place, for of such differences, much ado is made. *In Matter of S/S HELENA*, 529 F.2d 744, 1976 A.M.C. 2022 (5th Cir. 1976) (territorial waters), Judge Wisdom, writing for the Court, held that *Moragne* applied retroactively and that the federal general maritime remedy for wrongful death which it established "precluded recognition in admiralty of state statutes." 529 F.2d at 753. Thus the varying state laws on wrongful death, which for so long provided the only remedy if the injury occurred in territorial waters, fell before the banner of uniformity. *Accord, Nelson v.*

*United States*, 639 F.2d 469, 473 (9th Cir. 1980) (San Francisco Bay). *See also Law v. Sea Drilling*, *supra* (Brown, Ch. J.) (outer continental shelf).

Then in *Christofferson v. Halliburton Co.*, 534 F.2d 1147, 1976 A.M.C. 1307 (5th Cir. 1976) (high seas),[23] we held, relying upon precedent under FELA,[24] that under the Jones Act [25] the wife of an injured seaman has no cause of action for loss of consortium.[26] *Accord, Igneri v. Cie. de Transports Oceaniques*, 323 F.2d 257, 1963 A.M.C. 2318 (2nd Cir. 1963), *cert. denied*, 376 U.S. 949, 84 S.Ct. 965, 11 L.Ed.2d 969 (1964). *Cf. Skidmore v. Grueninger*, 506 F.2d 716, 1976 A.M.C. 1103 (5th Cir. 1975) (holding loss of consortium is a compensable harm under *Gaudet* for death in territorial waters). District Judge Freeman, sitting by designation, dissented. He argued that "the development of the general maritime law, as explained by *Gaudet*, coupled with recognition of a cause of action for loss of consortium resulting from maritime injuries by a 'clear majority' of the states and by this Court in *Skidmore*," 534 F.2d at 1154, 1976 A.M.C. at 1317, called for extension of the remedy.

In *Ivy v. Security Barge Lines, Inc.*, 606 F.2d 524, 1980 A.M.C. 356 (5th Cir. 1979) (en banc) (territorial waters), we gathered en banc to consider the logical next step:

**22.** Schill, *Three If By Sea, supra*, discusses the Fifth Circuit cases and attempts to square them with the Supreme Court decisions.

**23.** *Christofferson* was overruled in part by *Cruz v. Hendy International*, 638 F.2d 719, 1981 A.M.C. 816 (5th Cir. 1981), *on rehearing. See infra.*

**24.** *See New York Central & H. R. R. Co. v. Tonsellito*, 244 U.S. 360, 37 S.Ct. 620, 61 L.Ed. 1194 (1917), *Canal Barge Co. v. Griffith*, 480 F.2d 11, 31 (5th Cir. 1973), *modified*, 513 F.2d 911 (1975), *cert. denied*, 423 U.S. 840, 96 S.Ct. 71, 46 L.Ed.2d 60 (1975).

**25.** In *Mellon* and *Vreeland, see* note 17, *supra*, the Supreme Court held that such damages are not recoverable under FELA—the statutory Siamese twin of the Jones Act.

**26.** It is important but difficult indeed to distinguish between the terms "loss of consortium" and "loss of society". Courts routinely confuse

the two concepts which, although similar, embrace slightly different elements. Consortium generally is defined to include tangible losses (support and services provided by the other spouse) and intangible (non-pecuniary) hurt (love, companionship, society, affection, sexual relations, comfort and solace). *See Annotation: Measure and Elements of Damages in Wife's Action for Loss of Consortium*, 74 A.L. R.3d 805 (1976). Loss of society by contrast, is treated as a "sentimental" loss. *Id.* at 808, n.5. *Gaudet*, which casually employed the term "loss of society", disallowed recovery for the obviously sentimental "anguish or grief" the widow suffered, 414 U.S. at 585, n.17, 94 S.Ct. at 815, 39 L.Ed.2d at 21, 1973 A.M.C. at 2582. *See also, S/S HELENA, supra* (no recovery for mental anguish or grief under *Gaudet*); *McDonald, supra. See generally, Cruz v. Hendy International*, 638 F.2d at 722 nn.1, 2, 3, 1981 A.M.C. at 817–18. DOHSA, of course, limits recovery to pecuniary damages alone.

whether the survivor of a Jones Act seaman, once having proved negligence, could recover damages for loss of society. Referring to "settled Jones Act jurisprudence" and the "absence of any adequate reason to take a different tack", 606 F.2d at 525, 1980 A.M.C. at 357, Judge Rubin held that the survivor could not recover for this and other elements of nonpecuniary loss. He concluded: "The Jones Act is a vessel designed for special purposes; it is not certified for *Gaudet* cargo, and it does not permit the recovery in a wrongful death action of damages for loss of society of a seaman." 606 F.2d at 529, 1980 A.M.C. at 363.[27]

The dissent argued that the majority "[drained] *Moragne* and *Gaudet* of their vitality", 606 F.2d at 529, 1980 A.M.C. at 364, and "[made] a mountain of the Supreme Court's molehill of silence", 606 F.2d at 532, 1980 A.M.C. at 369 (Brown, J., dissenting).[28] While *Ivy*, of course, binds this panel, we point out that its rule that the survivor could not recover non-pecuniary damages by its own terms applies only to Jones Act cases arising in territorial waters. It does not automatically control in an action where death resulted from unseaworthiness on the high seas.

An alternate line of cases, which sidesteps *Ivy-Christofferson*, holds that one may join a Jones Act claim for negligence with a general maritime claim for wrongful death from unseaworthiness. In *Landry v. Two R. Drilling Co.*, 511 F.2d 138, 1975 A.M.C. 2135 (5th Cir. 1975) (Tuttle, J.) (Louisiana bayou), the widow of a seaman brought suit under both the Jones Act *and* general maritime law for wrongful death. Citing *Skidmore, supra,* and *McDonald v.*

*Federal Barge Lines, Inc.,* 496 F.2d 1376, 1974 A.M.C. 2325 (5th Cir. 1974), the Court declared "[W]here, as here, there is liability under both a Jones Act claim and a general maritime claim for unseaworthiness, this Court has recognized *Gaudet* damages as proper." 511 F.2d at 143, 1974 A.M.C. at 2142. The Court remanded to the District Court to determine the appropriate measure of damages for loss of society. *Accord, Smith v. Ithaca Corporation,* 612 F.2d 215, 226 (5th Cir. 1980) (Wisdom, J.);[29] *Hlodan v. Ohio Barge Line, Inc.,* 611 F.2d 71, 75, 1980 A.M.C. 2644 (5th Cir. 1980)[30]; *Canal Barge Co. v. Griffith,* 513 F.2d 911, 912–13 (5th Cir. 1975). Thus the Jones Act does not constitute an exclusive remedy.

Unlike the Jones Act, DOHSA does furnish an exclusive remedy for injuries occurring on the high seas, as *Higginbotham* makes clear. In *Sanchez v. Loffland Brothers Co.,* 626 F.2d 1228, 1981 A.M.C. 1149 (5th Cir. 1980) (high seas), *cert. denied,* 452 U.S. 962, 101 S.Ct. 3112, 69 L.Ed.2d 974 (1981), a panel of this Court refused to allow recovery under general maritime law where DOHSA applied. Heli Sanchez brought suit under the Jones Act and general maritime law for the wrongful death of her husband, a seaman on board a vessel in operation on Lake Maracaibo, Venezuela.[31] More than three years had passed since his death. The Court held that DOHSA's statute of limitations controlled.

[T]he mandate of *Moragne-Higginbotham* appears to us to be more specific. In our opinion, the *Higginbotham* rationale compels the application of the DOHSA statute of limitations in undiluted force to a

---

27. See generally, Schill, *Available Forums and Recoverable Damages in Offshore Personal Injury Litigation in the Fifth Circuit: A Review and an Analysis,* 16 Hous.L.Rev. 1 (1978).

28. See Maraist, *supra* at 92.

29. "*Landry* ... is still valid and is controlling in this case. When a death is caused in territorial waters by unseaworthiness, the survivors of a seaman may recover damages for loss of society under general maritime law in addition to any recovery permitted by the Jones Act."

30. "We conclude ... that *Mobil Oil* ... has no bearing upon this Circuit's rule that a Jones Act claim may be joined with a wrongful death claim for non-pecuniary damages based on general maritime law, where the incident does not arise on the high seas, and that non-pecuniary damages may be recovered under the unseaworthiness claim."

31. Lake Maracaibo, the southern extension of the Gulf of Venezuela, which is in turn an arm of the Caribbean Sea, is not land-locked. See The Times Atlas of the World 116 (comprehensive ed. 6th ed. 1980).

wrongful death claim under general maritime law which arises outside of the United States territorial waters.

626 F.2d at 1230, 1981 A.M.C. at 1151. The general maritime remedies did not oust DOHSA of primary jurisdiction.

In a similar vein, the Court of Appeals for the Second Circuit reached this result in *Public Administrator of the County of New York v. Angela Compania Naviera, S.A.,* 592 F.2d 58, 1979 A.M.C. 106 (2nd Cir. 1979) (high seas). The Administrator, as representative of the widow and children of Dimitrios Kontos, a Greek seaman, brought a wrongful death action against Kontos' employer more than four years after Kontos' death. Relying on the Jones Act and general maritime law, he charged that failure to provide adequate medical care hastened Kontos' death. Following a thorough review of the trilogy of Supreme Court decisions, Judge Meskill summarized: "[W]hen a death is caused outside territorial waters, and when a wrongful death action is brought under the general maritime law, federal courts should be guided by the Death on the High Seas Act as to the subsidiary elements of that cause of action." 592 F.2d at 63. The Court vacated and remanded to the District Court to consider the defense of laches with reference to DOHSA's two-year statute of limitations.

The Ninth Circuit also has followed suit. In *Renner v. Rockwell International Corporation,* 587 F.2d 1030 (9th Cir. 1978), it vacated and remanded to the District Court to consider whether *Higginbotham* would permit suit under both DOHSA and general maritime law. Taken in conjunction with *Sanchez* and *Angela Compania Naviera, supra, Renner* confirms that where the terms of DOHSA unambiguously apply, no *Moragne-Gaudet* general maritime law remedy exists.[32]

Skirting the shoals of precedent, *Cruz v. Hendy International, supra,* held that the spouse of a seaman entitled to recover for unseaworthiness has a general maritime law cause of action for loss of his society.

Jose Cruz, a member of the crew of the vessel LOUISIANA BRIMSTONE, working in Louisiana territorial waters, suffered severe personal injuries. He brought suit against the vessel owner for negligence under the Jones Act and for unseaworthiness under general maritime law. The jury, finding the owner negligent and the vessel unseaworthy, awarded him substantial damages. After the judgment was satisfied, Vilma Cruz, his wife, brought suit for loss of consortium, services and society, under both the Jones Act and general maritime law. On rehearing,[33] the Court, partially overruling *Christofferson, supra,* held that she had a good general maritime cause of action for the loss of her husband's society.

Judge Rubin first observed that *Gaudet* and *Alvez* established a right to recovery under general maritime law for the wife of a longshoreman or harbor worker, quite apart from the Jones Act. He reasoned that those cases did not support distinctions between different types of injured workers. Just as "there is no apparent reason to differentiate between fatal and non-fatal injuries in authorizing the recovery of damages for loss of society," *Alvez,* 446 U.S. at 281, 100 S.Ct. at 1677, 64 L.Ed.2d at 291, 1980 A.M.C. at 623, so he found "no more reason to distinguish between the types of workers whose rights stem from that same integral jurisprudence." 638 F.2d at 724, 1981 A.M.C. at 821. He recognized that the same damages were *not* recoverable under the Jones Act, and observed:

That statute itself creates an integrated remedial pattern. It establishes an action at law, not a maritime action.... Our decision in *Ivy* was distinguished by the Supreme Court in *Alvez* ... and a writ of certiorari in *Ivy* was denied only seven days after *Alvez* was decided. There is only seeming anomaly in the apparent possibility that the spouses of those who are not crew members may, under the general maritime law, have

---

**32.** *See Barbe v. Drummond,* 507 F.2d 794, 1975 A.M.C. 204 (1st Cir. 1974).

**33.** The Supreme Court's *Alvez* decision had arrived in the interim.

greater rights than do the spouses of the crew under the Jones Act. Insofar as the crew member is entitled to a seaworthy vessel, the maritime court extends to all those exposed to the seas' hazards equal solicitude.

638 F.2d at 725, 1981 A.M.C. at 822–23 (citation omitted).

Judge Rubin recognized that *Higginbotham* had limited the availability of *Moragne-Gaudet* general maritime recovery where DOHSA spoke to the subject, but, as he pointed out, "DOHSA's preemptive effect must be confined to its scope." 638 F.2d at 725, 1981 A.M.C. at 822. Where the injury occurred in territorial waters, DOHSA certainly did not control.

In *Solomon v. Warren*, 540 F.2d 777 (5th Cir. 1976) (high seas), we delineated the scope of damages under DOHSA. A private plane, piloted by Paul Warren and carrying passengers Jerome and Leatrice Levin, disappeared on a flight from Curacao to the Barbados. Solomon, the representative of the Levins' estate and guardian of their three children, brought suit under DOHSA for the parents' wrongful death. We affirmed the District Court's assessment of damages for the loss of the "nurture, instruction, and physical, intellectual, and moral training" the children would have received from their parents prior to attaining majority,[34] but reversed for any such damages accruing after the age of majority. We also upheld damages for loss of inheritance and for pecuniary loss of schooling or formal education for two of the children. Each of these claims, we held, constituted a pecuniary loss for DOHSA. "[A] couple's children . . . have a reasonable expectation that they would have been the beneficiaries of any prospective accumulations to the estates of their parents as the natural objects of their bounty." 540 F.2d at 790. *See National Airlines, Inc. v. Stiles,* 268 F.2d 400 (5th Cir.), *cert. denied,* 361 U.S. 885, 80 S.Ct. 157, 4 L.Ed.2d 121 (1959). *Accord, Cox v. Northwest Airlines, Inc.,* 379

F.2d 893 (7th Cir. 1967), *cert. denied,* 389 U.S. 1044, 88 S.Ct. 788, 19 L.Ed.2d 836 (1968); *Blumenthal v. United States,* 306 F.2d 16 (3d Cir. 1962). *See also* McCormick, Damages § 99, at 350 (1935); Tiffany, Death by Wrongful Act 378 (2d ed. 1913). There seems no reason to assume that Bodden's recovery for *his* damages during his lifetime precludes his surviving wife and children from collecting *their* DOHSA damages, as calculated in *Solomon.*

### . . . And We Answer

In navigating this narrow channel, we find it useful to circumscribe the bounds of the question before us. As Silbert Bodden's injury occurred on the high seas, the general maritime wrongful death remedy which *Moragne-Gaudet* created does not apply. Bodden argues that DOHSA only governs the measure of *damages;* a seaman injured on the high seas retains a *cause of action under general maritime law.* We cannot accept this distinction. *Higginbotham* makes abundantly clear that the general maritime law remedy applies only in territorial waters. As Justice Stevens observed, "In *Moragne* the Court recognized a wrongful death remedy that supplements federal statutory remedies. But that holding depended on our conclusion that Congress withheld a statutory remedy in coastal waters in order to encourage and preserve supplemental remedies." 436 U.S. at 625, 98 S.Ct. at 2015, 56 L.Ed.2d at 587, 1978 A.M.C. at 1065. *See Moragne,* 398 U.S. at 397–98, 90 S.Ct. at 1785–86, 26 L.Ed.2d at 354–55, 1970 A.M.C. at 985. When the incident takes place outside the three-mile limit, DOHSA and DOHSA alone controls. "[W]e have no authority to substitute our views for those expressed by Congress in a duly enacted statute." 436 U.S. at 626, 98 S.Ct. at 2015, 56 L.Ed.2d at 587, 1978 A.M.C. at 1066. For these reasons, Bodden derives no binding support for her separate cause of action from *Gaudet.* There the

---

**34.** See *Moore-McCormack Lines, Inc. v. Richardson,* 295 F.2d 583, 593 n.9a, 1962 A.M.C. 804, 816 (2d Cir. 1961), *cert. denied,* 368 U.S. 989, 82 S.Ct. 606, 7 L.Ed.2d 526 (1962); *M/V*

*ELAINE JONES, supra;* Speiser, *Recovery for Wrongful Death* 2d § 3:47 (1975). *Cf, Vreeland, supra.*

Supreme Court held as a matter of general maritime law that a surviving spouse could maintain a cause of action for wrongful death, a lifetime settlement by the decedent notwithstanding. Rulings under general maritime law, we repeat, cannot overcome the applicability of DOHSA.

Nor does the Jones Act or the cases construing it apply. The jury found no negligence, and we do not disturb that finding on appeal. It goes without saying that Jones Act negligence and unseaworthiness or negligence under DOHSA are entirely different claims with entirely different standards. While the Jones Act and DOHSA were passed in the same year,

> the congressional scheme ... proved a far from satisfactory response to the need for greater uniformity in maritime law, as the two statutes differ materially with respect to personal and geographic coverage, availability of survival actions, schedule of beneficiaries, standard of care, period of limitation, and forum in which suit may be brought.

Note, *Admiralty—Recovery for Wrongful Death on the High Seas Limited to Survivors' Pecuniary Loss*, 53 Tul.L.Rev. 254 (1978). As the leading commentators point out, "DOHSA and the Jones Act, enacted almost simultaneously, were hopelessly inconsistent with each other...." Gilmore and Black, *supra*, at 359.[35]

The parties have not appealed the propriety of the damage award. Counsel at oral argument conceded that the jury calculated DOHSA damages, *i.e.* the amount that would compensate the Boddens for their pecuniary loss alone. The only question before us, then, is a narrow one: can Arla Bodden sue for wrongful death under DOH-

SA when her husband recovered for his injuries before his death? We conclude that she can.

We echo again the words of Chief Justice Chase, sitting on circuit in *The SEA GULL*, 21 F.Cas. 909, 910 (No. 12,578) (C.C.Md. 1865).

> There are cases, indeed, in which it has been held that in a suit at law, no redress can be had by the surviving representative for injuries occasioned by the death of one through the wrong of another; but these are all common-law cases, and common-law has its peculiar rules in relation to this subject, traceable to the feudal system and its forfeitures ... and certainly it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy, when not required to withhold it by *established and inflexible* rules.

(emphasis added). *See also Moragne*, 398 U.S. at 387–88, 90 S.Ct. at 1780–81, 26 L.Ed.2d at 349, 1970 A.M.C. at 977, and cases cited. The admiralty's obligation to protect mariners, ancient and otherwise,[36] as Chief Justice Chase recognized, has endured throughout history. It requires an admiralty court to pour the remedy with a heavy hand. Unless we discern in DOHSA and its legislative history an "established and inflexible" intent to preclude Arla Bodden's action, we must adhere to the historical flexibility of the admiralty and affirm.

DOHSA provides, in 46 U.S.C. § 761:

> Right of action; where and by whom brought

> Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any

---

**35.** These inconsistencies reveal themselves in a number of ways. Not only do the coverage, class of beneficiaries and period of limitations differ, but the Jones Act, 46 U.S.C. § 688, directly incorporated "all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees"—FELA. DOHSA does not.

**36.** *See Ahmed v. American Steamship Mutual Protection and Indemnity Association*, 640 F.2d

993 (9th Cir. 1981); *Ivy, supra*, 606 F.2d at 529–530, 1980 A.M.C. at 364 (Brown, J., dissenting); *Greene v. Vantage Steamship Corp.*, 466 F.2d 159, 167, 1972 A.M.C. 2187, 2195 (4th Cir. 1972); *Spiller v. Thomas M. Lowe, Jr. and Associates, Inc.*, 466 F.2d 903, 1972 A.M.C. 2150 (8th Cir. 1972); *Gaudet, supra*, 463 F.2d at 1335, 1972 A.M.C. at 2580; *Dennis v. Central Gulf Steamship Corp.*, 453 F.2d 137, 1972 A.M.C. 330 (5th Cir. 1972). *See also* Coleridge, *Collected works.*

State, or the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued.

Section 762 provides:

*Amount and apportionment of recovery*

The recovery in such suit shall be a fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought and shall be apportioned among them by the court in proportion to the loss they may severally have suffered by reason of the death of the person by whose representative the suit is brought.

Then in § 765, on which Justice Powell relies so heavily in his *Gaudet* dissent, Congress provided:

*Death of plaintiff pending suit*

If a person [dies] as the result of such wrongful act, neglect, or default as is mentioned in section 1 [46 USCS § 761] during the pendency in a court of admiralty of the United States of a suit to recover damages for personal injuries in respect of such act, neglect, or default, the personal representative of the decedent may be substituted as a party and the suit may proceed as a suit under this Act [46 USCS §§ 761 et seq.] for the recovery of the compensation provided in section 2 [46 USCS § 762].

A careful reading and rereading of these sections convinces us that Congress did not address or intend to address the issue of two causes of action. Section 761 provides for those whom death has left without financial support. Thus the title of the Act. Their injuries differ fundamentally from those of the decedent. Silbert Bodden continued working, despite his injuries. His recovery amounted to $17,500, which compensated him for *his* injuries, hospital costs, etc. We do not believe that Congress intended for his recovery to abrogate that of his survivors.[37]

We find confirmation for this view in § 762. It apportions recovery of "fair and just compensation for the *pecuniary loss sustained by the persons for whose benefit* the suit is brought. . . ." (emphasis added). We agree with Justice Brennan in *Gaudet* that such losses are "unique to the decedent's dependents [and] could not accrue until the decedent's death." 414 U.S. at· 591–92, 94 S.Ct. at 818, 39 L.Ed.2d at 24–25, 1973 A.M.C. at 2586. Even though *Gaudet* did not involve DOHSA, the loss which it involved was similar: the loss of a breadwinner. Thus the language of *Gaudet*, although not controlling, furnishes a useful guide in analyzing this case. If Silbert Bodden's claim against his employer and Arla Bodden's claim for wrongful death are distinct causes of action, and we hold that they are, then his recovery should not and does not bar hers.

Justice Powell raised this question in his dissent in *Gaudet* and suggested that under § 765, fairly read, the prior settlement defeats any further cause of action. With all respect for the esteemed Justice, we do not agree. Section 765 allows a suit begun by an injured person to be continued by his survivors after he dies. Given the common law view that a suit for personal injuries could not survive the injured person's death,[38] this section only negates the com-

---

**37.** *See* 2 *Benedict on Admiralty* § 81, at *7–15* n.34 (7th ed. 1980).

**38.** The sponsor of DOHSA made clear in his statement on the floor of the House of Representatives that this outdated common law rule furnished the spur for the new legislation. Congressman Volstead declared, "if the injury did not result in death, a cause of action exists; the injured person might go into a court of admiralty and secure relief, but if death resulted courts applied the old common-law doctrine that the cause of action dies with the person; that is the cause of action was personal and did not survive the injured party." 59 Cong.Rec. 4482 (1920). We find in Congressman Volstead's proclaimed concern the explanation for the altogether ambiguous language of § 765.

mon law rule. It does not disallow the wrongful death action for which the Act otherwise provides merely because the decedent recovered for his personal injuries prior to his death. While § 765 may now prove superfluous, we cannot find in its wording an "established and inflexible" rule barring Mrs. Bodden's cause of action. Surely if Congress had intended such a result, it could and would have stated it more clearly.

We find no evidence to the contrary in the legislative history. Although aware that legislative history is "[a] singularly unhelpful source of information [containing] self-serving statement that support either side of an argument and most points between", *American Petroleum Institute v. E.P.A.*, 661 F.2d 340, 355 (5th Cir. 1981), we have nowhere else to turn.

Congress considered legislation similar to DOHSA on several occasions during several sessions. That fact belies the view that it, with the Jones Act, forms a uniform body of law covering maritime injuries. Congressman Volstead, sponsor of the bill, termed it "an old friend that has been pending in Congress a great many years." Its purpose, he explained, was "to supply [*sic*] a defect which now exists under what was the common-law rule as to actions affecting injuries that might be caused through the wrongful act or neglect of persons engaged in shipping on the high seas." "Nearly all countries," he continued, "have modified the old rule which did not allow relief in the case of death under such circumstances." To bring the United States in line with "this more humane and enlightened policy", he called upon his colleagues to "allow dependent parties to recover in case of death of their near relatives upon the high seas." 59 Cong.Rec. at 4482 (1920).

Debate in the House centered upon the exclusivity provision. Several members voiced concern that the Act might pre-empt state laws permitting a right of recovery by the survivors of one killed at sea. The language in Section 7 of the bill, 46 U.S.C. § 767, entitled "exceptions", was in fact amended to ensure that the Act did not interfere with pre-existing state law.

At no point did either the bill's sponsors or its opponents raise the point that now confronts us. We recognize that the Congress' failure to raise the question or discuss a potential problem cannot support a subsequent determination that it did or did not intend a certain result. From such a premise, no real conclusion follows. Yet we believe that Congress' intent to fill this narrow statutory hiatus should not now block the evolution of general maritime law. *Gaudet* holds that the recovery during his lifetime by an injured seaman of his own damages does not preclude his widow from suing to recover *her* damages. As a matter of general maritime law, we agree with that decision and believe that it should govern in this situation where the Act does not "speak directly to [the] question," absent any "established and inflexible" Congressional intent to the contrary. In so doing, we are not "[supplementing] Congress' answer so thoroughly that the Act becomes meaningless," *Higginbotham*, 436 U.S. at 625, 98 S.Ct. at 2015, 56 L.Ed.2d at 587, 1978 A.M.C. at 1065. Rather, we more nearly adhere to the "humane and liberal character" of the admiralty than if we deny the remedy on the basis of at best ambiguous expressions of Congressional intent.[39]

### Harmony of the Seas

Our decision also more nearly assures the uniformity within the admiralty which formed the cornerstone of Justice Harlan's opinion in *Moragne*. We recognize that neither course open to us will engender complete harmony. To permit Arla Bodden's cause of action creates disuniformity be-

---

**39.** Of course, in any such case a court must carefully scrutinize the earlier settlement to ensure that no double recovery ensues. On that point, we agree with the *Gaudet* majority that "damages ... can 'be left to turn mainly upon the good sense and deliberate judgment of the tribunal assigned by law to ascertain what is a just compensation for the injuries inflicted.' " 414 U.S. at 590, 94 S.Ct. at 817, 39 L.Ed.2d at 24, 1973 A.M.C. at 2585, *citing The City of Panama*, 101 U.S. 453, 464, 25 L.Ed. 1061, 1065 (1880).

tween DOHSA and the Jones Act. Yet, as we have pointed out, *supra*, those two statutes, although born in the same year and of the same parents, are not siblings. They speak to different problems. The Jones Act provides a remedy for negligence anywhere on the water while DOHSA only treats wrongful death resulting from unseaworthiness on the high seas. Neither the language of the statutes nor the legislative history mandates uniting this unlikely pair. If we disallow Arla Bodden's cause of action, we create some small uniformity in an area already "hopelessly inconsistent", Gilmore and Black, *supra*. We also would create inexplicable disuniformity in actions for wrongful death. For wrongful death resulting from unseaworthiness in territorial waters, the survivor of an injured seaman could recover damages notwithstanding the seaman's recovery during his lifetime. *Gaudet*. If an ill wind should blow the vessel across the all-important three-mile limit, that action would disappear like Cinderella's coach at midnight. It takes no great imagination to predict the consequences of such a rule. The location of the vessel, rather than the facts establishing unseaworthiness or the seaman's recovery, becomes the lodestar of any such action. Our decision, establishing one rule for actions for wrongful death resulting from unseaworthiness, wherever the death occurred, will create less confusion than any other course we could pursue.

We find no merit in any of appellants' other allegations of error.

AFFIRMED.

GEE, Circuit Judge, dissenting:

Today we add our tiny kernel of chaos to an area already and admittedly "hopelessly inconsistent" (maj. op. at 333) and characterized by doubly and sometimes trebly over-lapping remedies—some antediluvian, some decreed by Congress, some recently confected by the courts. This hash has been produced, as one commentary cited in the majority opinion notes, by a tendency on the part of courts "to ignore unequivocal statutory language which limits the rights of a given party"[1] and by their amiable willingness "to pour the remedy with a heavy hand" (maj. op. at 330) from the stores of maritime employers. Analogizing to *Gaudet*'s[2] treatment of the nonstatutory remedy for wrongful death created in *Moragne*,[3] the majority brings to life and action one horrible from Justice Powell's parade in dissent:

> Thus, it would be possible in theory for a person injured at sea to recover for his personal injuries and, following his death, for his survivors to attempt to bring suit under the High Seas Act. But certainly the Act would not be read as allowing the subsequent action.

*Gaudet*, 414 U.S. at 600, 94 S.Ct. at 822. And, true to the tradition noted above, my brothers brush aside express statutory language that by implication forbids a wrongful-death action following a decedent's judgment.[4] Dealing as they do with a statutory remedy and congressional language closely in point, their decision is even more radical than *Gaudet*. And since I thought and think, with all deference, that decision a wrong one, this one seems to me far more so. I respectfully dissent.

1. Schill, *Moragne-Gaudet: Three If by Sea*, 13 Hous.L.Rev. 917 (1976).

2. *Sea-Land Services v. Gaudet*, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974).

3. *Moragne v. States Marine Lines*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970).

4. The substitution provision of the Death on the High Seas Act, 46 U.S.C. § 765, provides that where one who suffers injuries covered by the Act dies while his personal injury action is pending, *that action* may be converted by his personal representative into one under the Act for wrongful death.